UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

Priya Saxena,                              )
                                           )
          Plaintiff,                       )
                                           )
v.                                         )          Civ. 5:25-cv-5035
                                           )
Kristi Noem, in her official capacity as   )
Secretary of Homeland Security;            )
the Department of Homeland Security;       )
and Todd Lyons, in his official capacity   )
as Acting Director of U.S. Immigration     )
and Customs Enforcement,                   )
                                           )
          Defendants.                      )
_____ )


**Reply Memorandum in Support of**
**<u>Motion for Preliminary Injunction</u>**

# **Table of Contents**

I.    Summary of argument                                                  3

II.   Facts in addition to those shown at the TRO hearing                  7

III.  Defendants implicitly concede that they illegally terminated Saxena's   9
      SEVIS status, and that this Court has jurisdiction

IV.   Defendants fail to prove that the case is moot                       10

      A.    The burden to prove mootness is heavy                          10

      B.    Defendants fail to prove mootness                             11

            1.    Defendants' current grounds for revoking SEVIS status   11
                  are just as lawless as their previous grounds for revoking
                  Saxena's SEVIS status, so defendants have not proven that
                  it is "absolutely clear that the allegedly wrongful behavior
                  could not reasonably be expected to recur"

            2.    Defendants' reinstatement of SEVIS status does nothing   13
                  to protect Saxena from the other harms the TRO enjoined

            3.    Saxena needs to retain SEVIS status after graduation in  13
                  order to apply for Optional Practical Training (OPT) and
                  a 24-month extension of post-completion OPT for students
                  with STEM degrees

            4.    Defendants' May 7 email confirms this case is not moot   18

V .   Defendants' three remaining grounds for resisting a preliminary      21
      injunction lack merit

VI.   Conclusion: lawlessness or the rule of law?                         24

## I.    Summary of argument

Defendants lawlessly terminated Priya Saxena's SEVIS status.  As this Court ruled, 8 C.F.R. § 214.1(d) establishes the grounds on which defendants may terminate SEVIS status.  Doc. 8 at 4.  Defendants admitted that they did not satisfy any of those grounds.  Doc. 8 at 4-5 ("At the hearing, the government indicated that it did not have evidence that any of the three circumstances existed here.")  They argued that Saxena's visa revocation was sufficient grounds for it to terminate her SEVIS status.  This Court rejected that argument, pointing to defendants' own policies, which state that visa revocation is not grounds for terminating a SEVIS record.  Doc. 8 at 4.  The Court granted a temporary restraining order to protect Saxena from the actual and threatened consequences of defendants' actions.

Since then defendants filed a Brief (Doc. 16), a "Notice of Filing" (Doc. 18), an Amended Brief (Doc. 20), and an Objection to Extension of Temporary Restraining Order (Doc. 21), none of which challenge the Court's finding or conclusion that their termination of Saxena's SEVIS status was unlawful.  So defendants do not contest that they lawlessly terminated Saxena's SEVIS status.

As required by the TRO, defendants reinstated Saxena's SEVIS status effective April 21.  Defendants say this makes the case moot.  But voluntarily ceasing unlawful conduct does not moot a case.  A case is moot only when it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."  *Ctr. For Special Needs Trust Admins., Inc. v. Olson*, 676 F.3d 688, 697 (8th Cir. 2012) quoting *Strutton v. Meade*, 668 F.3d 549, 556 (8th Cir. 2012) quoting *Strutton v. Meade*, 668 F.3d 549, 556 (8th Cir. 2012).

Defendants still have not agreed that they are required to follow 8 C.F.R. § 214.1(d) in terminating SEVIS status.  Extraordinarily, in response to nationwide litigation against their lawless actions, they *still* affirmatively maintain that they may revoke SEVIS status because of visa revocation (a ground not specified in 8 C.F.R. § 214.1(d)), *and* based on "any reason" they choose.  These startling realities are set out in the April 26 "Broadcast Message" issued by the Student and Exchange Visitor Program (SEVP).  Doc. 18.  Defendants describe it as "a new policy concerning the termination of records in the Student and Exchange Visitor Information System ('SEVIS')."  Doc. 18 at 1.

Defendants' conduct is consistent with the seventeenth-century view attributed to King Louis XIV that "l'état c'est moi," but inconsistent with fundamental separation of powers principles of the United States. Defendants cannot eradicate a federal regulation, and replace it with something completely different, by issuing a "Broadcast Message." To the contrary, the Administrative Procedures Act establishes how agencies can propose, promulgate, and amend or repeal regulations. It protects individual rights from lawless government action. *Morton v. Ruiz*, 415 U.S. 199, 232 (1974) ("The Administrative Procedure Act was adopted to provide, *inter alia*, that administrative policies affecting individual rights and obligations be promulgated pursuant to certain stated procedures so as to avoid the inherently arbitrary nature of unpublished ad hoc determinations.")

"The APA is a formula upon which opposing social and political forces have comes to rest." *Chrysler Corp. v. Brown*, 441 U.S. 281, 313 (1979) (cleaned up). "[C]ourts are charged with maintaining the balance: ensuring that agencies comply with the 'outline of minimum essential rights and procedures' set out in the APA." *Id.* at 232, quoting H. R. Rep. No. 1980, 79th Cong., 2d Sess., 16 (1946).

The APA requires publication of proposed rules, public comment periods, and publication of final rules with a statement of their basis and purpose. 5 U.S.C. § 553(b)(1)-(3). Parties can challenge in court agency action under the APA. 5 U.S.C. §§ 702, 704. Just as the APA applies to creating rules, it applies to "repeals or amendments of existing rules." *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 101 (2015) (cleaned up), citing 5 U. S. C. § 551(5). Defendants complied with none of the APA requirements in issuing their "Broadcast Message."

Having disregarded the lawful means for changing a regulation, defendants announced a new policy that allows them to proceed against Saxena exactly as they did in the past. First, the policy allows SEVP to "terminate records for a variety of reasons, including, but not limited to the following reasons: . . . U.S. Department of State Visa Revocation (Effective Immediately)." Doc. 18 at 2. So the instant this Court's TRO expires, defendants can do again exactly what they did before. Second, defendants' new policy allows SEP to terminate a SEVIS record when it "has objective evidence that a nonimmigrant visa holder is no longer complying with the terms of their nonimmigrant status *for any reason*" (emphasis added).

6

Not a whit of evidence shows that when defendants are no longer restrained by this Court, they will not use their new self-granted authority to again do exactly what they did to Saxena on April 7. Indeed, defendants' repeated flouting of the law to attempt to accomplish their objectives establishes that this Court's continued protection is essential to protect Saxena from unlawful harm.

In sum, it is not "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur," so this case is not moot. To the contrary, defendants embrace the lawlessness that led to the TRO by a new equally-lawless policy that allows them to do exactly what they did before. This Court can and should protect Saxena from the consequences of defendants' unwillingness to abide by the law.

## II.    Facts in addition to those shown at the TRO hearing

At the TRO hearing, defendants offered into evidence the August 2021 DUI charge against Saxena. TRO Hearing Exhibit 6. But the state dropped the case after Saxena's blood alcohol test came back as .061, a completely lawful level of blood alcohol while operating a motor vehicle. Declaration of James D. Leach of May 9, 2025, Exhibit 1.

7

Defendants assert that Saxena's visa was revoked "based on additional information that became available after her visa was issued" and in accordance with law. Doc. 16 at 3. But there was and is no such information. Her current visa was issued on February 14, 2022. She disclosed the 2021 charges to the U. S. Department of State before it issued her that visa. TRO Hearing Exhibit 1 p. 3.

Before issuing the visa, the Department of State required her to undergo a medical examination. She did so and the visa was issued. Defendants' "Guidance Directive 2016-03," which is 9 FAM [Foreign Affairs Manual] 403.11, provides that consular officers will "prudentially revoke" nonimmgrant visa of people arrested for driving while intoxicated, and that "This requirement does not apply when the arrest/conviction occurred prior to the date of the visa application and has already been assessed within the context of a visa application." Declaration of James D. Leach of May 9, 2025, Exhibit 2.

The same document provides: "If an exchange visitor is in the United States, the revocation of their visa does not override the J-1 status granted by Customs and Border Protection ('CBP') at the time of their entry or their ability to stay in the United States (except in extremely rare instances)."

8

### III. Defendants implicitly concede that they illegally terminated Saxena's SEVIS status, and that this Court has jurisdiction

Defendants do not dispute that the Court's TRO finding and conclusion were wrong. This effectively concedes that they illegally terminated Saxena's SEVIS status. The vast majority of courts that have heard this issue agree. *Doe v. Noem*, 2025 U.S. Dist. Lexis 80549, *14 n.1 (S. D. Iowa April 24, 2025) ("In the overwhelming majority of recent similar cases, district courts have found orders for temporary relief [from SEVIS termination] appropriate. Plaintiffs cite thirty such cases in their brief, and provide copies of many unreported cases for the Court. The Court lists many such cases here that include electronic reporter citations. [citing nineteen cases including *Saxena v. Noem*].") *Doe v. Bondi*, 2025 U.S. Dist. Lexis 78893, 2025 WL 1188469 (D. Georgia April 18, 2025) (granting TRO's for 113 plaintiffs). And conceded in another case that "Plaintiffs did not lose status under 8 C.F.R. § 214.1(g) for a qualifying conviction." *Madan B K v. Noem*, 2025 U.S. Dist. Lexis 86892 * 19, 2025 LX 73551 (W. D. Mich. May 7, 2025).

At the TRO hearing and in their brief (Doc. 16), defendants argued that this Court has no jurisdiction. But the defendants' Amended Brief (Doc. 20) withdraws

that claim. This proves—at a minimum—that this administration's litigation positions are not necessarily meritorious, or even well thought out.

## IV.    Defendants fail to prove that the case is moot

### A.    The burden to prove mootness is heavy

"A defendant's actions that potentially render a controversy moot 'must be viewed with a critical eye.'" *Irvine v. Johnson*, Civ. 21-4224 (D.S.D. So. Div.), Doc. 60 at 19-20 (2004), quoting *Knox v. Serv. Emps. Int'l. Union*, 567 U.S. 298, 307 (2012). A party claiming that a case is moot bears a "'heavy' burden." *Kennedy Bldg. Assocs. v. Viacom, Inc.*, 375 F.3d 731, 745 (8th Cir. 2004), quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979). "A case becomes moot if it can be said with assurance that there is no reasonable expectation that the violation will recur or if interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Id.* Voluntary cessation of illegal conduct is not grounds for finding a case moot. "Otherwise, the courts would be compelled to leave the defendant free to return to his old ways." *Ctr. For Special Needs Trust Admins., Inc. v. Olson*, 676 F.3d 688, 697 (8th Cir. 2012) (cleaned up). A case is moot only if it is

"absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.*, quoting *Strutton v. Meade*, 668 F.3d 549, 556 (8th Cir. 2012).

**B.    Defendants fail to prove mootness**

    **1.    Defendants' current grounds for revoking SEVIS status are just as lawless as their previous grounds for revoking Saxena's SEVIS status, so defendants have not proven that it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur"**

Section I of this brief shows that defendants' current position is no different from the position they took when they terminated Saxena's SEVIS status: that they can do so when they choose to do so, without regard for 8 C.F.R. § 214.1(d). Section I also shows why this does not make the case moot. Courts agree. *Madan B K v. Noem*, 2025 U.S. Dist. Lexis 86892 * 22, 2025 LX 73551 (W. D. Mich. May 7, 2025), granted a preliminary injunction, rejecting defendants' argument that their "Broadcast Message" of April 26, and their reinstatement of plaintiffs' SEVIS status mooted the case. The court concluded that "Defendants have not borne their burden of demonstrating that the challenged conduct could not reasonably be expected to recur." *Id. * 27.*

11

Other cases agree. *Doe v. Noem*, 2025 U.S. Dist. Lexis 79668 (April 25, 2025) (challenge to SEVIS revocation; defendants reinstated SEVIS record then argued case was moot; court refuses to find the case moot because defendants could arbitrarily terminate his SEVIS status again for other reasons). The same factors are present here. This decision was issued even before defendants explicitly claimed authority in their April 26, 2025, policy to terminate SEVIS status based on visa revocation or "any other reason." *In re Rodriguez*, 2025 U.S. Dist. Lexis 83349 (D. Conn. May 1, 2025), rejected defendants' mootness argument after they reinstated plaintiff's SEVIS status. The court ruled that defendants did not prove that revocation could not reasonably be expected to recur. The court cited the April 26 "SEVIS Notice - Policy Regarding Termination of Records" (Doc. 18 in the instant case). The new policy "would allow Defendants to terminate [Rodriguez's] SEVIS record *again* without [providing] her [with] formal notice and the opportunity to be heard." 2025 U. S. Dist. Lexis 83349 * 27 (emphasis in original). So "Without injunctive relief, Parra Rodriguez is once again at risk of . . . detention, and removal due to a potentially arbitrary, capricious, and unlawful decision by Defendants." *Id.*

### 2.     Defendants' reinstatement of SEVIS status does nothing to protect Saxena from the other harms the TRO enjoined

Defendants assert that this case is moot because Saxena will graduate from the School of Mines on May 10.  Doc. 20 at 5.  But this ignores the other harms that Saxena sought protection from, and that the Court granted.  One is protection from defendants "taking any enforcement action against Saxena arising directly or indirectly from the termination of her SEVIS record or visa."  Doc. 8 at 7.  Despite the reinstatement of her SEVIS status, once the TRO expires, defendants could again revoke her SEVIS status and take enforcement action against her at any moment. Another is protection from defendants "interfering with Saxena's freedom and from transferring Saxena out of the jurisdiction of the District of South Dakota during these proceedings."  Doc. 8  at 7.  In the absence of a court order, defendants still could take such action at any moment after the TRO expires.

### 3.     Saxena needs to retain SEVIS status after graduation in order to apply for Optional Practical Training (OPT) and a 24-month extension of post-completion OPT for students with STEM degrees

The Complaint, Doc. 1 at 9, alleges that revoking Saxena's SEVIS status will cause her to be unable to apply for Optional Practical Training benefits.  The

Memorandum filed with the Complaint, Doc. 5 at 10, explains: "Section 214.2(f) provides additional valuable rights for students.  These include the right to apply for Optional Practical Training (OPT) (section 214.2(f)(10)(ii)) and the right to apply for a 24-month extension of post-completion OPT for students such as Saxena who receive a degree in science, technology, engineering, or mathematics (section 214.2(f)(10)(ii)(C)).  (All citations to Section 214 are to the version effective January 17, 2025, to November 27, 2026.)"

Defendants' only response is that their approval of Saxena to participate in OPT is "discretionary," and "there is no evidence that Ms. Saxena has been approved to participate in OPT."  Doc. 20 at 6.  It is true that defendants retain some discretion with respect to Saxena's participation in OPT.  But it is also true that without lawful SEVIS status, Saxena is not eligible even to apply for OPT.  So without SEVIS status, Saxena is shut out of OPT *ab initio*.

Saxena is proceeding normally through the OPT process.  She has not been approved yet, but she is—so long as she has SEVIS status—entitled by law to apply.

14

Many courts have recognized that SEVIS status termination eliminates a person's ability to apply for, engage in, and complete OPT training, and have granted injunctive relief on that basis, just as requested here:

- *Doe v. Noem*, 2025 U.S. Dist. Lexis 79170 * 22-23, 2025 WL 1208277 (April 25, 2025) ("termination of a student's record in SEVIS results in the loss of on campus employment authorization, meaning that Plaintiff is unable to continue his OPT research work"; "effectively eliminating his ability to complete his OPT program . . . [would] plac[e] his career trajectory in jeopardy"; "inability to finish his research project due to the SEVIS record termination—and resultant inability to publish his findings . . . is not something that Plaintiff can get back.")

- *Vyas v. Noem*, 2025 U.S. Dist. Lexis 82196 * 2-3 (S. D. W. Va. April 30, 2025) (court orders defendant to restore plaintiff's SEVIS record and "process Plaintiff's request for OPT and, if approved, process and award his Employment Authorization Document as

15

would have occurred if Defendants had not engaged in the action described in the Complaint.")

- *Doe v. Trump*, 2025 U.S. Dist. Lexis 77957 * 19, 2025 WL 1192826 (D. Ariz. April 25, 2025) ("Plaintiff's Declarant, Ms. Shishegar, a DSO [Designated School Official] with 18 years of experience . . . states . . . that USCIS will not approve a student's OPT application if their SEVIS record has been terminated.) *Id.* * 23 (court enjoins defendants from an action that would affect "any post-graduate employment authorization (Optional Practical Training) that she is entitled to as an F-1 nonimmigrant student in lawful status).

- *He v. Noem*, 2025 U.S. Dist. Lexis 79245 * 7, 2025 WL 1208254 (W. D. Wa. April 25, 2025) (university advised students on OPT/CPT (Optional Practical Training/Curricular Practical Training) that "The termination of your SEVIS record automatically ends your work authorization.  You must stop working immediately to avoid unauthorized employment.")

- *Doe v. Noem*, 2025 U.S. Dist. Lexis 81034 * 9 (W. D. Wisc. April 28, 2025) (university advised plaintiff whose SEVIS record was terminated "that he could no longer participate in OPT or work.")

- *Isserdasani v. Noem*, 2025 U.S. Dist. Lexis 87567, 2025 LX 69272 (W. D. Wisc. May 7, 2025) (court issued preliminary injunction to plaintiff scheduled to graduate on May 10, 2025, because he plans to apply for OPT and cannot do so without active SEVIS record, and plaintiff "is at direct risk of having his anticipated OPT rejected but for reinstatement of his SEVIS status." *Isserdasani v. Noem* * 23.)

In short, this case is not moot for the additional reason that Saxena must retain SEVIS status after graduation to continue her application for Optional Practical Training (OPT), and for the 24-month extension of post-completion OPT available for her because she has a STEM degree.  Applying for both is her lawful right.

17

####     4.      Defendants' May 7 email confirms this case is not moot

On May 7, defendants stated in an email:

> "1.     ICE has no plans under its new SEVIS policy to re-
> terminate [Ms. Saxena's] SEVIS record based solely on the
> NCIC [National Crime Information Center] record that
> [defendants allege] led to its initial termination.

> "2.     ICE's reactivation of [Ms. Saxena's] SEVIS record is being
> made retroactive to the date of its initial termination such
> that there is no gap in [her] SEVIS record [and any
> authorization end date for OPT has been reset to the end
> date set forth in [her] SEVIS record before its termination].
> [bracketing in paragraph 2 from "and" to "termination" in
> original email]."

Defendants' email then repeats their claim that this case is moot.  Declaration of James D. Leach Exhibit 3.  But far from making this case moot, the May 7 email shows why this case is *not* moot.  The email relies on the "new SEVIS policy"—i.e. the April 26 "Broadcast Message" (Doc. 18)—in which defendants ignored the

18

Administrative Procedures Act and unlawfully purported to arrogate unto themselves the right to replace lawfully-adopted federal regulations with their new "policy," based solely on their own say-so. The new "policy" allows them to continue the actions that caused this litigation, namely to revoke SEVIS status because of visa revocation *and* based on "any reason" they choose.

The first paragraph says only that ICE "has no plans"—meaning as of May 7—to re-terminate her SEVIS record "based solely on the NCIC record that led to its initial termination." For two reasons, this sentence does not get within light-years of proving that it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Ctr. For Special Needs Trust Admins., Inc. v. Olson*, 676 F.3d 688, 697 (8th Cir. 2012). First, "has" is the present tense, so defendants are saying only that they have no *current* plans to re-terminate her SEVIS record. Tomorrow or the next day could bring new plans.

Second, defendants carefully limit their email to re-termination "based *solely* on the NCIC record that [defendants allege] led to its initial termination." (emphasis added, brackets inserted). Saxena inserted the words "defendants allege" in brackets because this is only defendants' latest story, and the record does not

19

support it.  In fact, defendants told Saxena that the reason her SEVIS status was terminated was that she was "identified in criminal records check *and/or has had their VISA revoked.*"  Doc. 4-2.  Defendants argued at the TRO hearing and in their initial brief, Doc. 16, that the Court has no jurisdiction over this case because it has no jurisdiction to review the visa revocation.  Doc. 16 at 8.  By restricting its promise not to re-terminate her SEVIS status today "based solely" on the NCIC record, defendants leave free their option to re-revoke her SEVIS status at any time based on her visa revocation, or on any other reason.

In sum, defendants' May 7 email confirms that, as they state in their April 26 "policy," defendants insist on keeping all options on the table.  Consistent with their email, they can re-terminate Saxena's SEVIS status tomorrow for any reason, and they can still re-terminate it today, or any day, for any reason except "solely" based on the NCIC record of her 2021 traffic conviction that she disclosed before her visa was re-issued in February 2022.  So the May 7 email confirms the appropriateness of preliminary injunctive relief to protect Saxena from the same threatened unlawful harms that caused this Court and so many others to issue a temporary restraining order.

*Vyas v. Noem*, 2025 U.S. Dist. Lexis 88200 * 20-21, 2025 LX 69438 (S. D. W. Va.

May 8, 2025), granted a preliminary injunction in favor of a student after defendants

terminated his SEVIS status.  The court ruled that defendants did not moot the case

by representing that they have "no plans under its new SEVIS policy to re-terminate

the plaintiff(s) SEVIS record based solely on the NCIC record that led to its initial

termination."  The court noted that defendants did not promise they will return to

their prior policy, and that defendants had left open the possibility that plaintiff's

SEVIS record could be terminated based on defendants' visa revocation.  Likewise,

*Doe v. Noem*, 2025 U.S. Dist. Lexis 87878 * 10-12, 2025 LX 58651 (D. N. J. May 8, 2025),

granted a preliminary injunction despite defendants' new policy of April 26, 2025,

and defendants' reactivation of plaintiffs' SEVIS records.  And *Doe v. Trump*, 2025

U.S. Dist. Lexis 88038, 2025 LX 83460 (N. D. Ill. May 8, 2025), granted a preliminary

injunction to eight plaintiffs whose SEVIS status was terminated.

## V.    Defendants' three remaining grounds for resisting a preliminary injunction lack merit

First, defendants argue that Saxena has not shown a threat of irreparable

harm. They rely on *Nken v. Holder*, 556 U.S. 418, 435 (2009), but that case says only

that removal *alone* is not "*categorically* irreparable" (emphasis added).  *Nken*

21

recognizes that whether to grant a stay "is an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case." *Id.* at 433 (cleaned up).

This case does not involve removal *alone*; it also involves the risk that Saxena will be—as defendants explicitly threatened—fined, detained, and deported "at a time that does not allow the person being deported to secure possessions or conclude affairs in the United States," and warned her that "Persons being deported may be sent to countries other than their countries of origin." Doc. 4-2. Every single court that has granted injunctive relief to people whose SEVIS records were unlawfully terminated found a threat of irreparable harm, because that is an essential requirement for an injunction. *In re Rodriguez,* 2025 U.S. Dist. Lexis 83349 *24-25 (D. Conn. May 1, 2025) ("Dozens of courts have held termination of a student's SEVIS record under similar or identical circumstances to Parra Rodriguez's constitutes irreparable harm and granted preliminary relief based on that finding.") *Doe v. Bondi*, 2025 U.S. Dist. Lexis 78893 * 16, 2025 WL 1188469 (D. Georgia April 18, 2025) (finding for 133 plaintiffs that "the imminent risk of irreparable harm to Plaintiffs flowing from the termination of their SEVIS records outweighs any harm

the government will experience from the TRO"). *Madan B K v. Noem*, 2025 U. S. Dist.

Lexis 86892 * 27, 2025 LX 73551 (W. D. Mich. May 7, 2025) (court issued preliminary

injunction after finding that "Plaintiffs have borne their burden of persuading the

Court that they cannot be assured, for the foreseeable future, that they will not suffer

irreparable injury absent a preliminary injunction.")

Second, defendants assert that "termination [of a SEVIS record] is an internal

record keeping action that is not a final agency action subject to review." Doc. 20 at

6. It provides no authority for this claim. *Jie Fang v. Dir. United States Immigration*

*& Customs Enforcement*, 935 F.3d 172, 185 (3d Cir. 2019) disagrees. So have the

dozens of courts that have granted injunctive relief to people whose SEVIS records

were unlawfully terminated. Many of those decisions are collected in *Doe v. Noem*,

2025 U.S. Dist. Lexis 80549, *14 n.1 (S. D. Iowa April 24, 2025).

Third, defendants argue that the Court has no jurisdiction with respect to the

State Department's decision to revoke Saxena's visa, or to interfere with defendants'

discretion to start removal proceedings. Doc. 20 at 6. But neither of these matters

are at issue here: Saxena has not challenged the revocation of her visa, and

defendants have not begun removal proceedings.

## VI.    Conclusion: lawlessness or the rule of law?

This case involves lawlessness.  Defendants lawlessly terminated Saxena's SEVIS status.  They conceded at the TRO hearing that they had no lawful grounds for termination.  They do not even claim now that their actions were lawful.

After the TRO was issued, defendants lawlessly purported to abrogate 8 C.F.R. § 214.1(d) when they "promulgated a new policy" (Doc. 16 at 1) without regard for the Administrative Procedures Act concerning repeal of a regulation and establishment of another.

Even putting aside the lawless way in which it was created, the new policy is lawless on its face.  The policy lawlessly asserts that defendants may revoke SEVIS status because of visa revocation (a ground not specified in 8 C.F.R. § 214.1(d)), *and* based on "any reason" defendants choose.  Doc. 18.

The necessary and appropriate response to lawlessness is to enforce the rule of law.  Saxena respectfully asks the Court to do so.  She asks the Court to issue a preliminary injunction that preliminarily enjoins defendants in the same manner set forth in the Order Granting Plaintiff's Motion to Extend Temporary Restraining Order, Doc. 25 at 3.

Dated: May 9, 2025                    Respectfully submitted,

                                     /s/ James D. Leach
                                     James D. Leach
                                     Attorney at Law
                                     1617 Sheridan Lake Rd.
                                     Rapid City, SD 57702
                                     Tel: (605) 341-4400
                                     jim@southdakotajustice.com
                                     Attorney for Plaintiffs

                          Certificate of Service

    I certify that on May 9, 2025, I filed this document by CM/ECF, thereby
causing automatic electronic service to be made on defendants.

                                     /s/ James D. Leach
                                     James D. Leach