UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| PRIYA SAXENA,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security; THE DEPARTMENT OF HOMELAND SECURITY; and TODD LYONS, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement,<br><br>　　　　　Defendants. | 5:25-CV-05035-KES<br><br><br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION |

Plaintiff, Priya Saxena, moves under Federal Rule of Civil Procedure 65 for a preliminary injunction against defendants, Secretary of the Department of Homeland Security, Kristi Noem, the Director of Immigration and Customs Enforcement (ICE), Todd Lyons, and the United States Department of Homeland Security (DHS). Docket 2. Defendants oppose the motion for a preliminary injunction. Dockets 16, 20. For the reasons stated below, the court grants Saxena's motion for a preliminary injunction.

## BACKGROUND

### I.    Nonimmigrant F-1 Student Status and SEVIS Records

The Immigration and Nationality Act (INA) permits international students to enter the United States with a nonimmigrant F-1 visa and enroll at government-approved educational institutions. *See* 8 U.S.C. § 1101(a)(15)(F)(i).

Once a student enters the United States with an F-1 visa, the student is granted F-1 student status and is permitted to remain in the United States for the duration of status[1] if the student continues to meet certain conditions outlined in 8 C.F.R. § 214.2(f).

To acquire F-1 student status, an applicant must present a Form I-20, which is issued by a school certified by DHS's Student Exchange Visitor Program (SEVP). 8 C.F.R. § 214.2(f)(1). Certified schools must issue the Form I-20 using the Student and Exchange Visitor Program (SEVIS) system—DHS's centralized database used to maintain information regarding F-1 students in the United States. *See* 8 C.F.R. § 214.3(a)(1); 8 U.S.C. § 1372. A school must have dedicated school officials (DSOs), who are responsible for overseeing enrolled students holding F-1 visas and for updating the student's records in SEVIS to indicate whether the student has maintained their status. *See* 8 C.F.R. § 214.3(g) (outlining recordkeeping and reporting requirement for DSOs at certified schools).

An international student with F-1 status is permitted to stay in the United States as long as they continue to meet the requirements of their visa classification by maintaining a full course of study or engaging in "authorized practical training following the completion of studies."[2] 8 C.F.R. § 214.2(f)(5).

---

[1] "Duration of status is defined as the time during which an F-1 student is pursuing a full course of study at an educational institution certified by SEVP for attendance by foreign students, or engaging in authorized practical training following completion of studies." 8 C.F.R. § 214.2(f)(5)(i).

[2] Students are entitled to participate in two types of post-completion practical training: Curricular Practical Training (CPT) and Optional Practical Training

Once a student has completed their course of study and any authorized practical training, they generally have 60 days to either depart the United States or transfer to another approved academic institution. *Id.* A student who "fails to maintain a full course of study without the approval of the DSO or otherwise fails to maintain status," must immediately leave the United States or seek reinstatement of their status. 8 C.F.R. § 214(f)(5)(iv); *see also* 8 U.S.C. § 1184(a)(1). Reinstatement is discretionary, and, if denied, the student may not appeal the decision. 8 C.F.R. § 214.2(f)(16)(ii).

Additionally, nonimmigrant visa-holders, such as students with F-1 visas, must refrain from certain specified activity to maintain their lawful visa status. 8 C.F.R. § 214.1(e)-(g). This means F-1 visa students are prohibited from engaging in unauthorized employment, providing false information to DHS, or engaging in "criminal activity." *Id.* For purposes of maintaining status, criminal activity is defined as a "conviction . . . for a crime of violence for which a sentence of more than one year imprisonment may be imposed." 8 C.F.R. § 214.1(g). Further, absent student conduct causing a status violation, DHS may terminate an F-1 student's status only in the following three ways: (1) by revocation of a previously authorized waiver under 8 U.S.C. § 1182(d)(3) or 1182(d)(4) on the individual's behalf; (2) through introduction of a private bill in

---

(OPT). *See* 8 C.F.R. § 214.2(f)(10)(i) & (ii). Students may also qualify for a "24-month extension of post-completion OPT for a science, technology, engineering, or mathematics (STEM) degree." 8 C.F.R. § 214.2(f)(10)(ii)(C). In such a scenario, "duration of status" is defined as "the period beginning on the date that the student's application for OPT was properly filed and pending approval, including the authorized period of post-completion OPT, and ending 60 days after the OPT employment authorization expires." 8 C.F.R. § 214.2(f)(10)(D).

3

Congress to confer permanent resident status; or (3) by notification in the Federal Register on the basis of national security, diplomatic, or public safety reasons. 8 C.F.R. § 214.1(d).

Prior to April 26, 2025, it was DHS and ICE's policy that "[v]isa revocation is not, in itself, a cause for termination of the student's SEVIS record." Docket 5 at 8 (quoting ICE, *Policy Guidance*, 1004-04-*Visa Revocations*, 1, 3 (June 7, 2010)); *see also* Docket 1-1 ¶ 15 (explaining that "both [DHS] and ICE have stated that visa revocation has no effect on visa status"). Under this policy, it was generally understood that "even after visa revocation[,] an F-1 student maintains [visa] status" and would not suffer a termination of their SEVIS record. Docket 1-1 ¶ 15.

On April 26, 2025, however, ICE promulgated a new policy concerning the termination of students' SEVIS records. *See* Docket 18. Specifically, the policy states that "[a] terminated record in SEVIS could indicate that the nonimmigrant no longer maintains" F-1 status. *Id.* at 2. The policy also provides that "[i]f [the U.S. Department of State] revokes a nonimmigrant visa effective immediately, SEVP may terminate the nonimmigrant's SEVIS record based on the visa revocation with immediate effect." *Id.* at 3.

## II.    Termination of Saxena's SEVIS Record

Saxena is a citizen and national of India. Docket 1 ¶ 1. She lawfully entered the United States on an F-1 student visa to enroll in a Ph.D. program in Chemical and Biological Engineering at the South Dakota School of Mines and Technology. *Id.* ¶¶ 1, 6-7. Having worked toward receiving her Ph.D. degree

since January 2020, Docket 4 ¶ 7, Saxena successfully graduated from the program on May 10, 2025. *See* Docket 1 ¶¶ 1, 22.

Saxena asserts she was "a bona fide student pursuing a full course of study" during her Ph.D. program. *Id.* ¶ 7. Although Saxena was charged with driving or control of a vehicle while under the influence on or about August 7, 2021, Docket 13 at 12-13, the charge was dismissed after Saxena pleaded guilty to failure to stop for an emergency vehicle,[3] Docket 11 at 3; Docket 1 ¶ 15. Saxena ultimately paid a fine for the 2021 traffic violation. Docket 4 ¶ 5. Further, Saxena informed the U.S. Embassy in New Delhi of the traffic violation prior to the issuance of her current 2022 visa. *Id.* ¶ 6; Docket 11 at 3. Saxena explained at the preliminary injunction hearing that her 2022 visa was renewed after an interview, review of the legal documents related to her 2021 traffic violation, and a full medical examination.

On April 7, 2025, Saxena received an email from the Consular Information Unit in the U.S. Embassy in New Delhi stating that "additional information became available after [Saxena's] visa was issued. As a result, [Saxena's] F-1 visa with expiration date 09-FEB-2027 was revoked in accordance with Section 221(i) of the United States Immigration and Nationality Act." Docket 37 at 38. The email also informed Saxena that:

> Remaining in the United States without lawful immigration status can result in fines, detention, and/or deportation. It may also make you ineligible for a future U.S. visa. Please note that deportation can

---

[3] Failing to stop for an emergency vehicle is a Class 2 misdemeanor under South Dakota law and imposes a minimum fine of $275. SDCL § 32-31-6.1. The maximum penalty for a Class 2 misdemeanor is 30 days imprisonment and a fine of $500. SDCL § 22-6-2.

> take place at a time that does not allow the person being deported to secure possessions or conclude affairs in the United States. Persons being deported may be sent to countries other than their countries of origin.

*Id.* On the same day, Saxena received an email from her DSO at the School of Mines. *Id.* at 39. Her DSO explained that, as of April 4, 2025, Saxena's "SEVIS immigration record ha[d] been terminated by the Department of Homeland Security." *Id.* In the email, her DSO indicated that reason for the termination of her SEVIS record was "[i]ndividual identified in [a] criminal records check and/or has had their VISA revoked. SEVIS record has been terminated." *Id.* DHS did not notify Saxena that her SEVIS record had been terminated; she only learned of her altered status through her DSO. Docket 1 ¶¶ 9-11.

On April 16, 2025, the School of Mines informed Saxena that, due to the termination of her SEVIS record, she would not be allowed to graduate from her Ph.D. program on May 10, 2025. *Id.* ¶¶ 12, 22; Docket 4 ¶ 7. The termination of her SEVIS status and record also threatened "the possibility of additional training and opportunities that otherwise would be available to [Saxena] under the law, including OPT (optional practical training)." Docket 4 ¶ 7. Her DSO wrote to the United States Citizenship and Immigration Services requesting that Saxena's F-1 student status be reinstated. Docket 1 ¶ 17; Docket 4-4. But the DSO did not receive a response. Docket 1 ¶ 17.

## PROCEDURAL HISTORY

On April 17, 2025, Saxena filed a complaint against defendants raising two claims: (1) unlawful termination of her SEVIS record in violation of the

6

Administrative Procedure Act (APA); and (2) violation of her rights to procedural due process in violation of the Fifth Amendment. Docket 1 at 10-11. That same day, Saxena moved for a temporary restraining order and for a preliminary and permanent injunction. Docket 2. In her motion, Saxena requested a TRO to (1) restrain the government from taking enforcement action against, interfering with, or transferring Saxena outside the court's jurisdiction; and (2) require defendants to set aside their termination decision as to Saxena's SEVIS record and status. *Id.*; Docket 3.

On April 18, 2025, the court entered a TRO, requiring defendants to reinstate Saxena's SEVIS record and status, retroactive to April 4, 2025. Docket 8 at 8. The TRO further enjoined defendants from taking any additional enforcement action against Saxena arising from termination of her SEVIS record or visa, and enjoined defendants from transferring Saxena out of the court's jurisdiction during these proceedings. *Id.* at 7. The court extended this TRO for a period of 14 days, set to expire on May 16, 2025. Docket 25 at 3. The court then held an evidentiary hearing on the motion for a preliminary injunction on May 13, 2025. Docket 35.

## LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy and the burden of establishing the propriety of an injunction is on the movant." *Roudachevski v. All-Am. Care Ctrs., Inc.*, 648 F.3d 701, 705 (8th Cir. 2011). Its "primary function . . . is to preserve the status quo until, upon final hearing, a court may grant full, effective relief." *Cigna Corp. v. Bricker*, 103 F.4th 1336, 1342 (8th Cir.

7

2024) (internal quotation marks omitted). To determine whether a preliminary injunction is appropriate, the court considers the following factors: "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on [the nonmovant]; (3) the probability that [the] movant will succeed on the merits; and (4) the public interest." *Mgmt. Registry, Inc. v. A.W. Cos., Inc.*, 920 F.3d 1181, 1183 (8th Cir. 2019) (alterations in original) (internal quotation marks omitted); *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc). The *Dataphase* test for preliminary injunctive relief requires a flexible analysis. *See Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc.*, 182 F.3d 598, 601 (8th Cir. 1999). Thus, when weighing these factors, "no single factor is in itself dispositive." *Calvin Klein Cosmetics Corp. v. Parfums de Coeur, Ltd.*, 824 F.2d 665, 667 (8th Cir. 1987). "[A]ll of the factors must be considered to determine" whether the balance weighs toward granting the injunction. *Id.*

## DISCUSSION

After hearing testimony from Saxena and argument from the government at the preliminary injunction hearing, the court is persuaded that the balance of factors favors granting Saxena's motion for a preliminary injunction to maintain the status quo for the reasons set forth below.

## I.    Likelihood of Success on the Merits

"While no single factor is determinative, the probability of success factor is the most significant." *Cigna Corp.*, 103 F.4th at 1342 (internal quotation marks omitted). "When determining the likelihood of [plaintiff's] success on the

merits, [the court does] not have to decide whether [plaintiffs] will ultimately win[, but an] injunction cannot issue if there is no chance of success on the merits." *Jet Midwest Int'l Co., Ltd. v. Jet Midwest Grp., LLC*, 953 F.3d 1041, 1044 (8th Cir. 2020) (cleaned up) (citations omitted). Further, the Eighth Circuit does not require a "party seeking preliminary relief [to] prove a greater than fifty per cent likelihood that [the party] will prevail on the merits." *PCTV Gold, Inc. v. SpeedNet, LLC*, 508 F.3d 1137, 1143 (8th Cir. 2007) (internal quotation marks omitted). But the plaintiff must show a "fair chance of prevailing," *Jet Midwest*, 953 F.3d at 1045 (internal quotation marks omitted), and "need only establish a likelihood of succeeding on the merits of any one of [its] claims," *Richard/Wilkin Joint Powers Auth. v. U.S. Army Corp of Eng'rs*, 826 F.3d 1030, 1040 (8th Cir. 2016) (internal quotation marks omitted).

Saxena alleges that defendants terminated her SEVIS record and F-1 student status without any statutory or regulatory authority and without articulating their basis for the termination decision. Docket 1 ¶¶ 27-28. She thus alleges that the termination decision was "arbitrary, capricious, an abuse of discretion, and not in accordance with law, in excess of statutory authority, and without procedure required by law." *Id.* ¶ 28. Defendants respond that Saxena is not likely to succeed on the merits of her APA claim because her claim is moot, defendants' action is not a "final" agency action under the APA, and the court does not have jurisdiction to interfere with defendants' discretion to start removal proceedings. Docket 20 at 4, 6. The court will first address

defendants' arguments before addressing whether Saxena is likely to succeed on the merits of her APA claim.

### A.    Mootness

Defendants argue that Saxena's request to restore her SEVIS record is moot because Saxena's SEVIS record has been reinstated. *Id.* at 4-5. In an email to Saxena's counsel, defendants stated that "ICE has no plans under its new SEVIS policy to re-terminate [Saxena's] SEVIS record based solely on the [National Crime Information Center (NCIC)] record that led to [the SEVIS record's] initial termination." Docket 28-3. Defendants state that based on the above statement, and its assertion that "ICE's reactivation of [Saxena's] SEVIS record is being made retroactive to the date of its initial termination," Saxena's case is now moot. *Id.*

Defendants' assertions, however, do not moot this action. Saxena argues that defendants' voluntary cessation by reinstatement of students' SEVIS records cannot be used to moot Saxena's case because "illegal conduct is not grounds for finding a case moot." Docket 27 at 10. Although Saxena's SEVIS record has been re-instated, *see* Docket 16 at 6-7, a court will moot a case only if it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Ctr. For Special Needs Tr. Admins., Inc. v. Olson*, 676 F.3d 688, 697 (8th Cir. 2012) (internal quotation marks omitted); *see also FBI v. Fikre*, 601 U.S. 234, 241 (2024). "Mere voluntary cessation of allegedly illegal conduct does not moot a case; otherwise, the courts would be compelled to leave '[t]he defendant . . . free to return to his old ways.' " *Ctr. For*

10

*Special Needs Tr.*, 676 F.3d at 697 (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)).

At the time Saxena's SEVIS record was terminated, it was ICE's policy that "[v]isa revocation is not, in itself, a cause for termination of the student's SEVIS record." Docket 5 at 8 (quoting ICE, Policy Guidance 1004-04 – Visa Revocations, 1, 3 (June 7, 2010)). While ICE's updated policy now allows termination of a nonimmigrant's SEVIS record based on visa termination, *see* Docket 18 at 3, "when reversing a policy . . . an agency may not simply [change courses] without a reasoned explanation." *Organized Vill. of Kake v. U.S. Dep't of Agric.*, 795 F.3d 956, 968 (9th Cir. 2015) (en banc). The record is devoid of a sufficient explanation for why defendants unlawfully and arbitrarily terminated Saxena's SEVIS record despite this policy statement. And without a reasoned explanation from defendants justifying the termination of Saxena's SEVIS record, there is a genuine risk that, in the absence of injunctive relief, Saxena's SEVIS record could be arbitrarily revoked again. As such, the court concludes that defendants' voluntary cessation of its arbitrary termination of students' SEVIS records cannot be used to moot this case because it would allow defendants to freely return to their old ways. *See City of Mesquite*, 455 U.S. at 289.

The court's conclusion is bolstered by the numerous district court orders similarly finding that reinstatement of a student's SEVIS record does not moot

the student's claims despite ICE's new policy statement.[4] *See, e.g.*, *Rodriguez v. Noem*, 2025 WL 1284722, at *9 (D. Conn. May 1, 2025) (concluding that "[d]efendants' voluntary reinstatement of [plaintiff's] SEVIS record does not show that her SEVIS record termination cannot 'reasonably be expected to recur.' ") (citation omitted); *Madan B. K. v. Noem*, 2025 WL 1318417, at *9 (W.D. Mich. May 7, 2025) (finding same); *Gonzalez v. Noem*, 2025 WL 1355272, at *4-5 (D. Or. May 9, 2025) (finding same). District courts have also found defendants' argument that they have no plans to re-terminate the student's SEVIS record to be insufficient to moot similar claims. *See, e.g. Vyas v. Noem*, 2025 WL 1351537, at *7 (S.D. W Va. May 8, 2025) ("Defendants cannot moot this case with a declaration that there are currently 'no plans' to terminate Plaintiff's SEVIS record based on his misdemeanor conviction."); *Student Doe No. 1 v. Noem*, 2025 WL 1224783, at *6-7 (E.D. Pa. Apr. 28, 2025) (finding same). Thus, the court concludes that although Saxena's SEVIS record has been reinstated, her claims are not moot because defendants have failed to show that re-termination of her SEVIS record is not reasonably expected to reoccur. *See Ctr. For Special Needs Tr.*, 676 F.3d at 697.

---

[4] Defendants also submitted declarations from U.S. governmental officials reiterating that defendants have "no plans under its new SEVIS policy to re-terminate the plaintiff(s) SEVIS record based solely on the NCIC record that led to its initial termination," Docket 29 at 4, and that termination of F-1 students' records left no gaps in a student's SEVIS record, *id.* at 5. For similar reasons, the court finds these declarations unavailing in supporting defendants' argument for mootness. *See Vyas v. Noem*, 2025 WL 1351537, at *7 (S.D. W Va. May 8, 2025) (concluding that defendants' submitted declarations from U.S. government officials fail to show that F-1 student's claim is moot).

### B.     Finality of Agency Actions

Defendants next argue that Saxena cannot succeed on her APA claim because "termination [of a SEVIS record] is an internal record keeping action that is not a final agency action subject to review." Docket 20 at 6. The APA "allow[s] a person 'adversely affected or aggrieved' by agency action to obtain judicial review thereof, so long as the decision challenged represents a 'final agency action for which there is no other adequate remedy in court.' " *Webster v. Doe*, 486 U.S. 592, 599 (1988) (quoting 5 U.S.C. §§ 701-06). A final agency action must mark "consummation of the agency's decisionmaking process" and "the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Sisseton-Wahpeton Oyate of Lake Traverse Rsrv. v. U.S. Corps of Eng'rs*, 888 F.3d 906, 915 (8th Cir. 2018) (cleaned up).

Here, the court agrees with Saxena that termination of her F-1 student status is a final agency action. *See* Docket 27 at 23. In *Jie Fang v. Dir. U.S. Immigr. & Customs Enf't*, 935 F.3d 172, 182 (3d Cir. 2019), the Third Circuit held that the termination of a student's F-1 status constitutes a final agency action because the termination marked the consummation of the agency's decision-making process. *Id.* The Third Circuit also reasoned that the termination order determines a right or obligation because it "end[s] the student's legal status in the United States." *Id.* at 180. In so holding, this court joins several other district courts in preliminarily concluding that SEVIS terminations of a student's F-1 status qualify as a final agency action. *See, e.g.*,

*Doe v. Noem*, 2025 WL 1141279, at *3 (W.D. Wash. Apr. 17, 2025) (holding that termination of SEVIS record and student status was a final agency decision); *Chen v. Noem*, 2025 WL 1163653, at *7-8 (S.D. Ind. Apr. 21, 2025) (finding same). As a result, the court rejects defendants' argument that termination of Saxena's SEVIS record is not a final agency action.

### C.    Court's Jurisdiction

Defendants lastly argue that this court lacks jurisdiction "to consider the State Department's decision to revoke Ms. Saxena's F-1 visa"[5] or "to interfere with the Executive's discretion to commence removal proceedings." Docket 20 at 6. Defendants assert that 8 U.S.C. § 1252(g) forecloses judicial review of decisions to commence removal proceedings because this decision is committed to agency discretion. *Id.*

Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings . . . against any alien under this chapter." 8 U.S.C. § 1252(g). The Supreme Court encourages courts to read § 1252(g) narrowly. *See Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 486 (1999) (reasoning that § 1252(g) "applies only to three

---

[5] The court also finds that 8 U.S.C. § 1201(i) does not deprive this court of jurisdiction to hear Saxena's claims. Saxena is not challenging the revocation of her visa. Docket 27 at 23. Thus, the statute does not preclude judicial review of defendants' termination of Saxena's SEVIS record, which arises independently from the visa revocation. *See also Ozturk v. Trump*, 2025 WL 1145250, at *12 (D. Vt. Apr. 18, 2025) (concluding that § 1201(i) does not deprive the court of jurisdiction to hear F-1 student's challenge of SEVIS record termination where the student is not challenging the revocation of their visa).

discrete actions that the Attorney General may take: her 'decision or action' to 'commence proceedings, *adjudicate* cases, or *execute* removal orders' ") (quoting 8 U.S.C. § 1252(g)). Further, several district courts interpreting the Supreme Court's narrow construction of § 1252(g) have concluded that § 1252(g) does not deprive the court of jurisdiction to hear an F-1 student's claims under the APA. *See, e.g.*, *Chen*, 2025 WL 1163653, at *9-10; *Doe v. Noem*, 2025 WL 1134977, at *7 (E.D. Cal. Apr. 17, 2025); *Ozturk*, 2025 WL 1145250, at *12. Because Saxena does not challenge a decision to commence removal proceedings, but instead challenges defendants' termination of her SEVIS record and F-1 status, the court concludes that it has jurisdiction to enjoin defendants from imposing any consequences, including detention and removal, resulting from the termination of Saxena's SEVIS record and F-1 status.

### D.    Saxena's APA Claim

Saxena argues that she is likely to succeed on the merits of her APA claim because she has not committed any of the violations that would trigger the lawful termination of her F-1 student status and defendants did not terminate her SEVIS record in compliance with 8 C.F.R. § 214.1(d). *See* Docket 27 at 8-9, 24. The APA "sets forth the procedures by which federal agencies are accountable to the public and their actions subject to review by the courts." *Dep't of Homeland Sec. v. Regents of Univ. of Cal.*, 591 U.S. 1, 16 (2020) (internal quotation marks and citation omitted). Under the APA, a court may "hold unlawful and set aside agency action" that is "arbitrary, capricious, and abuse of discretion," "in excess of statutory jurisdiction," or "without

observance of procedure required by law." 5 U.S.C. § 706(2)(A), (C)-(D). To survive arbitrary and capricious review, an agency must "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (internal quotation marks and citation omitted).

As explained above, termination of a SEVIS record and status can occur in only two circumstances when: (1) a student fails to maintain status, or (2) DHS terminates status. *See* 8 C.F.R. §§ 214.2(f), 214.1(d). Defendants fail to argue that Saxena's termination was due to her failure to maintain status and fail to indicate that one of the three circumstances under § 214.1(d) existed to justify the termination of Saxena's SEVIS record. *See also* Docket 8 at 4-5 (noting that at the hearing for a TRO, the government admitted it did not have evidence that any of the three circumstances outlined in § 214.1(d) existed in Saxena's case). Thus, in the absence of a "satisfactory explanation for [defendants'] action," the court concludes that Saxena is likely to succeed on the merits of her APA claim.[6] *Motor Vehicle*, 463 U.S. at 43.

## II.    Threat of Irreparable Harm

To establish the second *Dataphase* factor, Saxena must show that she is "likely to suffer irreparable harm in the absence of preliminary relief[.]" *Winter*

---

[6] Because the court determines that Saxena is likely to succeed on the merits of her claim under the APA, the court need not address Saxena's Fifth Amendment Due Process Claim. *See Richard/Wilkin Joint Powers Auth.*, 826 F.3d at 1040.

*v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Failure to demonstrate irreparable harm is sufficient to deny a motion for preliminary injunction. *Grasso Enters., LLC v. Express Scripts, Inc.*, 809 F.3d 1033, 1040 (8th Cir. 2016) (quoting *Watkins Inc.*, 346 F.3d at 844). The irreparable harm must be "likely in the absence of an injunction," *Winter*, 555 U.S. at 22, and must be "great[,] and of such imminence that there is a clear and present need for equitable relief." *Iowa Utils. Bd. v. FCC*, 109 F.3d 418, 425 (8th Cir. 1996) (citation omitted).

Saxena argues that, absent an injunction, she will suffer irreparable harm in the form of potential detention and removal with the possibility of deportation to a country other than her country of origin. Docket 27 at 17. Saxena also argues that without an active SEVIS record, she would be unable to apply for OPT and for a 24-month extension of post-completion OPT. *Id.* Defendants argue that Saxena has not shown a likelihood of irreparable harm because removal proceedings have not been initiated against her, she has graduated from her Ph.D. program, and Saxena's approval into an OPT program is discretionary. Docket 20 at 5-6.

The court previously found irreparable harm existed because termination of Saxena's SEVIS record resulted in the loss of her academic progress, and left Saxena in an uncertain legal status. Docket 8 at 5-6. In similar cases, many district courts have found that the loss of timely academic progress constitutes irreparable harm. *See Doe v. Noem*, 2025 WL 1161386, at *6 (W.D. Va. Apr. 21, 2025) (collecting cases). Other district courts have found that irreparable harm

exists where there is a "loss of or delay in obtaining employment authorization." *See Doe*, 2025 WL 1141279, at *7 (collecting cases).

As Saxena explained at the preliminary injunction hearing, she has not yet applied for OPT but plans to finalize her application to OPT in the coming days. Saxena also indicated that she has the forms necessary to apply and her DSO has recommended her for OPT. Further, Saxena explained that if she is prevented from applying or participating in OPT, she would lose the opportunity to pursue areas of research proposed in her Ph.D. dissertation, thus derailing her future employment opportunities.

Also, if Saxena's SEVIS record is terminated once again, Saxena would be ineligible to apply for OPT. Docket 27 at 14; *see also Isserdasani v. Noem*, 2025 WL 1330188, at *8 (W.D. Wis. May 7, 2025); (holding that plaintiff suffered an irreparable harm where, without an active SEVIS record, the plaintiff's anticipated OPT was at risk of being rejected); *Doe v. Trump*, 2025 WL 1192826, at *7 (D. Ariz. Apr. 25, 2025) (noting that plaintiff's school would not approve plaintiff's OPT application if their SEVIS record has been terminated). Absent injunctive relief, Saxena's career trajectory is jeopardized by the risk that defendants will once again arbitrarily terminate her SEVIS record. In such a scenario, Saxena would lose the ability to engage in post-graduate employment opportunities through OPT that she is entitled to enjoy as an F-1 nonimmigrant student.

Because several district courts in similar circumstances have determined that "the interruption of educational programs or progress," including

18

programs like OPT, can be an irreparable harm, the court finds that Saxena also faces irreparable harm even though she has already graduated from her Ph.D. program. *See Doe*, 2025 WL 1141279, at *8 (collecting cases that held that the "loss of opportunity to participate in post-secondary education programs is an irreparable harm").

Further, while the government is correct that removal, by itself, is not an irreparable harm, *Nken v. Holder*, 556 U.S. 418, 435 (2009), many district courts have concluded that the threat and harms of removal "would magnify the other harms [p]laintiff has suffered and raise serious doubts about [their] ability to return to the United States to . . . pursue professional opportunities," *Doe*, 2025 WL 1161386, at *6; *see also Doe*, 2025 WL 1141279, at *8 (finding that removal "would compound the other harms [p]laintiff faces" by interrupting their academic progress and "causing [them] economic and reputational loss wherever [they] ultimately reside"). In receiving notification of the revocation of her visa, Saxena was also notified that she may be "[deported] to countries other than [her] country of origin." Docket 37 at 38. The fear of arrest and detention, including removal to a country outside the student's country of origin "without justification," has also led district courts to find that the potential mental anguish such students may suffer "is more than [a] speculative [harm]." *Isserdasani*, 2025 WL 1330188, at *8; *see also Gonzalez*, 2025 WL 1355272, at *5 (concluding plaintiffs' fear that they may be arrested and deported at any time in the absence of injunctive relief to be a non-

speculative harm based on "[d]efendants' unceasing attempts to remove noncitizens from the country").

Based on the above, Saxena's uncertain legal status as it relates to her ability to apply for OPT programs and the more-than speculative risk that she may be arrested and deported in the absence of injunctive relief convinces this court that Saxena will suffer an irreparable injury absent a preliminary injunction.

## III.    Balance of the Hardships and Public Interest

"When the government is a party, the balance of equities and the public interest factors merge. *Nken*, 556 U.S. at 435. The public has a vested interest in having governmental agencies abide by federal laws as "[t]here is generally no public interest in the perpetuation of unlawful agency action." *Missouri v. Trump*, 128 F.4th 979, 997 (8th Cir. 2025) (quoting *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)).

Here, defendants assert that the public interest tips in their favor because "[c]ontrol over immigration is a sovereign prerogative." Docket 30 at 7 (quoting *El Rescate Legal Servs., Inc. v. Exec. Office of Immigr. Review*, 959 F.2d 742, 750 (9th Cir. 1992)). As stated above, however, defendants have provided no indication that they complied with the relevant statutory framework in enforcing immigration laws. Under these circumstances, because defendants' actions appear unlawful and are likely to cause Saxena irreparable harm, the court determines that the public interest tips in favor of Saxena's request for the court to issue an injunction in this case. Further, defendants have not put

forth evidence showing how a preliminary injunction would cause them injury or harm. *See generally* Docket 20. Thus, the court concludes that the balance of the equities and the public interest weigh in favor of granting Saxena's motion for a preliminary injunction.

## CONCLUSION

After careful consideration of the *Dataphase* factors, the court concludes that plaintiff has met her burden of showing that a preliminary injunction should be issued. Thus, it is ORDERED:

1. Saxena's motion for a preliminary injunction (Docket 2) is granted. Defendants remain enjoined from taking any enforcement action against Saxena arising directly or indirectly from the April 2025 termination of her SEVIS record or visa.

2. Defendants also remain enjoined from interfering with Saxena's freedom or transferring Saxena out of the jurisdiction of the District of South Dakota during these proceedings without prior court approval.

3. Defendants are required to continue to set aside their determination to mark Saxena's F-1 student status as terminated. Defendants shall also ensure that Saxena's student status and SEVIS authorization, remain active, retroactive to April 4, 2025.

4. Defendants shall maintain Saxena's SEVIS record for the duration of the litigation absent defendants becoming aware of a newly discovered independent legal ground allowing removability. Defendants shall

provide notice to Saxena and this court of an intent to terminate

Saxena's SEVIS status or record 15 days prior to such termination.

Dated May 15, 2025.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE