UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | | |
|---|---|---|
| Priya Saxena, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. 5:25-cv-5035 |
| | ) | |
| Kristi Noem, in her official capacity as | ) | |
| Secretary of Homeland Security; | ) | |
| the Department of Homeland Security; | ) | |
| and Todd Lyons, in his official capacity | ) | |
| as Acting Director of U.S. Immigration | ) | |
| and Customs Enforcement, | ) | |
| | ) | |
|     Defendants. | ) | |
| _____ | ) | |

**Dr. Saxena's Opposition to Motion to Dismiss**

## Table of Contents

I. Facts — 3

II. Summary of the government's arguments and this response — 5

III. The government's challenge to jurisdiction fails — 6

    A. This Court ruled it has jurisdiction — 6

    B. The relief this Court granted is not subject to further review — 7

    C. If the Court reconsiders the merits the injunctive relief it granted, the Court was and is correct, because the Court granted the minimum relief fairly required by the government's misconduct — 8

IV. This Court already rejected the government's mootness argument; no grounds exist for reconsidering it now; if the Court reconsiders the argument, it still lacks merit — 11

V. This Court already ruled that the Complaint states a claim on which relief can be granted; no basis exists to reconsider that ruling; and if it is reconsidered on the merits, this Court remains correct — 13

VI. This Court already found that Dr. Saxena faces irreparable harm sufficient to justify the preliminary injunction; no grounds exist for reconsideration; and this Court was right — 14

VII. Defendants' permanent injunction argument fails — 16

VIII. Conclusion — 17

I.  **Facts**

Shortly after midnight on April 7, 2025, Priya Saxena, who was more than five years into a Ph.D. program at South Dakota School of Mines and Technology, received and read the government's email telling her that her F-1 visa was revoked; that remaining in the United States without lawful immigration status "can result in fines, detention, and/or deportation"; that "deportation can take place at a time that does not allow the person being deported to secure possessions or conclude affairs in the United States," and that "Persons being deported may be sent to countries other than their country of origin." Doc. 4-2.

The email made her feel numb all over. She did not sleep that night. The next day she bought an airplane ticket to return to India, scheduled to leave in a week. She hid in her room. During that week she spoke to her now-attorney. After doing so, she delayed her departure for another week to see if there was a possibility of judicial relief. Testimony of Dr. Saxena, May 13, 2025. Before that second week was up, this Court granted a temporary restraining order enjoining the government from taking any enforcement action arising from the termination of her SEVIS record or visa, and from interfering with her freedom or transferring her out of the jurisdiction of the District of South Dakota during these proceedings, and requiring

3

the government to temporarily set aside its determination to mark her F-1 student status as terminated, and reinstate it retroactive to April 4, 2025.  Doc. 8 at 7-8.

When Dr. Saxena attended the preliminary injunction hearing on May 13, she had not applied for Optional Practical Training (OPT), because she was waiting to see whether a preliminary injunction would be granted.  Testimony of Dr. Saxena, May 13, 2025.

The cause of the government's attention to Dr. Saxena was its manic focus on foreigners present in this country, including those, like her, who were and are here lawfully.  The excuse for the government's attention was her arrest for DUI and failure to yield in August 2021.  Her blood alcohol level was .061%, so she was innocent of the DUI charge.  Doc. 38 at 6.  She admitted to failure to yield and was fined.  Doc. 4 ¶ 5.

In January 2022, after she traveled to India, she learned that her visa had been revoked because of the arrest.  Doc. 38 at 7-8.  She went to the U.S. embassy and applied for a new visa. Doc. 38 at 9-15.  She provided the embassy with copies of all papers concerning her arrest.  It sent her for a medical examination.  The examination lasted about seven hours.  She was questioned again about her arrest.  She answered honestly.  At the end of the exam, she received a sealed envelope with

the results to deliver back to the embassy. She delivered it. Testimony of Dr. Saxena, May 13, 2025. The embassy issued her a new visa valid through February 4, 2027. Doc. 38 at 35. Under U.S. Guidance Directive 2016-13, 9 FAM 403.11-3, this was sufficient to assess her arrest and conviction, meaning that once it had been so assessed, it would not be re-assessed. Doc. 38 at 7. All was well thereafter until April 7, 2025.

The Complaint sought relief from the government's unlawful action so that she could graduate, *and* further relief so she could pursue Optional Practical Training under 8 CFR § 214.2(f)(10)(ii)(C). Doc. 1 at 8-9.

On May 10, 2025, Dr. Saxena graduated with a Master's Degree in Chemical Engineering and a Doctor of Philosophy degree in Chemical and Biological Engineering. Testimony of Dr. Saxena, May 13, 2025. She has already authored twelve peer-reviewed papers and two peer-reviewed book chapters. Doc. 38 at 3-4. On June 29, the U.S. Citizenship and Immigration Service approved her application to work in the United States. Doc. 51, Declaration of James D. Leach, Exhibit 1.

## II.   Summary of the government's arguments and this response

The government makes five arguments in support of its motion to dismiss. First, that the court lacks jurisdiction, and the preliminary injunction's fifteen-day

notice requirement was improper. Second, the case is moot. Third, Dr. Saxena has failed to state a claim on which relief can be granted. Fourth, she failed to show potential irreparable harm. And fifth, she is not entitled to a permanent injunction.

This Court has already decided these claims, except the fifth, which is new. The first four claims could only be raised through a motion for reconsideration, which is disfavored. The government has not moved for reconsideration, and has not shown any grounds to support a motion for reconsideration. If the Court construes the government's motion as seeking reconsideration, and decides to reconsider, the Court's previous rulings were and are correct.

### III.   The government's challenge to jurisdiction fails

#### A.   This Court ruled it has jurisdiction

After notice, briefing, and hearing, this Court ruled: "Because Saxena does not challenge a decision to commence removal proceedings, but instead challenges defendants' termination of her SEVIS record and F-1 status, the court concludes that it has jurisdiction to enjoin defendants from imposing any consequences, including detention and removal, resulting from the termination of Saxena's SEVIS record and F-1 status." Doc. 39 at 15.

Before the preliminary injunction hearing, the government argued that this Court lacked jurisdiction. Doc. 16 at 4-6. Then it filed an Amended brief withdrawing this claim. Doc. 20. Now it reasserts it. Doc. 47 at 11-16. It fails to show any meritorious grounds in support of its claim. Its focus seems to be on the relief this Court granted.

### B. The relief this Court granted is not subject to further review

The government argues that this Court had no authority to restrain it from "interfering with Saxena's freedom or transferring Saxena out of the jurisdiction of the District of South Dakota during these proceedings without prior court approval"; or to require it to "maintain Saxena's SEVIS record for the duration of the litigation absent defendants becoming aware of a newly discovered independent legal ground allowing removability"; or to "provide notice to Saxena and this court of an intent to terminate Saxena's SEVIS status or record 15 days prior to such termination." Doc. 47 at 11, quoting Doc. 39 at 21-22.

After briefing and a hearing, this Court decided the issue of preliminary injunctive relief. The unstated premise of the government's argument is that it is entitled to another unfettered bite at that apple. But once an issue is decided, it is settled in the absence of extraordinary circumstances. "Motions for reconsideration

7

serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 414 (8th Cir. 1988), quoting *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987). Such motions "are 'nothing more than Rule 60(b) motions when directed at non-final orders.'" *Elder-Keep v. Aksamit*, 460 F.3d 797, 984 (8th Cir. 2006), quoting *Anderson v. Raymond Corp.*, 340 F.3d 520, 525 (8th Cir. 2003) (footnote omitted). Here the government has shown no extraordinary circumstances and no newly-discovered evidence. So it is not entitled to reconsideration.

### C. If the Court reconsiders the merits of the injunctive relief it granted, the Court was and is correct, because the Court granted the minimum relief fairly required by the government's misconduct

This litigation began when the government wrote Saxena that at any moment she could be arrested and deported, perhaps to a country other than her own. This Court concluded that these threats were probably unlawful. Doc. 39 at 15-16. The government, with its vast experience, resources, legal experience, and legal talent, surely knew they were illegal. The government did not care. It made them anyway. After all, it was a no-lose deal for the government: recipients either fled back to their home countries, or if they were lucky enough to find a lawyer who was qualified, willing, and able to represent them on very short notice, they could stay and fight,

8

and at worst a court would restore the status quo to what existed before the government made the threats.

The email terrified Dr. Saxena to the point that she could not sleep that night, and the next day she purchased an air ticket back to India. She hid in her room so she would not get arrested. No one knows how many people in her situation did not find legal assistance, or found it cost more money than they had, and fled back to their home countries. Each of these people is a tragedy.

The government asserts that this Court was wrong because "[t]he decision to commence removal proceedings, adjudicate cases, or execute removal orders is the subject of prosecutorial discretion." Doc. 47 at 12. But the preliminary injunction does not affect the government's discretion to do any of those things. Nor does the preliminary injunction—as the government alleges—"interfere with the enforcement of immigration laws and statutes enacted by the duly elected representatives of the people" or "usurp[] lawful enforcement of immigration laws." Doc. 47 at 12 and 15.

The injunction gives Dr. Saxena breathing space so that she can sleep, eat, go out in public, and as far as possible go about the normal life that the government promised her when it issued her a visa and SEVIS status, thereby authorizing her to come to this country and study here. Considering that the government chose to

9

begin this case by lawless threats including arrest and deportation to a foreign country, this was and is the least possible relief that any human being—let alone an accomplished scholar and scientist like Dr. Saxena whose criminal history (one traffic ticket) is cleaner than most lawyers'—should be entitled to under these circumstances.

The government is free to institute any other immigration enforcement actions it wishes against Dr. Saxena—not that any grounds for such a thing exist. It need only give 15 days notice of doing so. The government has never shown, and does not suggest here, how this conceivably could cause it any injury. On the other side of the scale, it would cause any reasonable person, such as Dr. Saxena, extreme stress and anxiety to live in the knowledge that she could be snatched off the street at any instant and incarcerated in another state, or sent to another country, far from friends, colleagues, and legal counsel. Such balancing of interests is the essence of the judicial function in assessing and imposing injunctive relief. This Court fairly balanced these interests. The government litigated the preliminary injunction issue and lost. It is entitled to no relief now.

**IV.     This Court already rejected the government's mootness argument; no grounds exist for reconsidering it now; if the Court reconsiders the argument, it still lacks merit**

The government alleges that the facts have changed, apparently meaning that it "has no plans under its new SEVIS policy to re-terminate SEVIS records based solely on the National Crime and Information Center ('NCIC') record that led to their initial terminations." Doc. 47 at 7. But this is nothing new. The government previously said the same thing. Doc. 20 at 4-5 ("Plaintiff's request to re-instate her SEVIS record is moot. . . . a preliminary injunction is not necessary to maintain the status quo. Because the relief Plaintiff seeks is already in place, the Court should deny Plaintiff's request for a preliminary injunction." Doc. 20 at 4-5.

Before the preliminary injunction hearing, the government added to the record the Declarations of Andre Watson, James Hicks, and Michelle Young. Docs. 29-1, 29-2, and 29-3. And the government argued at the preliminary injunction hearing that the case was moot. This Court rejected these arguments. Doc. 39 at 10-12, concluding "defendants have failed to show that re-termination of her SEVIS record is not reasonably expected to recur." Nothing has happened since then to change this. No grounds exist for reconsidering it now. If the Court reconsiders it, the argument still lacks merit.

11

The factual basis for the government's argument is that "Ms. [demonstrating its pettiness, the government refuses ever to call her Dr.] Saxena requested an order . . . so that she could graduate on May 10, 2025 . . . Ms. Saxena has already obtained the relief granted. Her SEVIS record was returned to active, and she graduated on May 10, 2025. Her case is moot because there is no more relief this Court can provide her." Doc. 47 at 17.

But there are two fundamental problems with this argument. First, from the beginning, Dr. Saxena alleged that "harms the government's actions, if unrestrained and uncorrected, will cause [her] in the future include but are not limited to: . . . that she will be unable to apply for or receive additional benefits that she is eligible for based on her student status, including Optional Practical Training (OPT) under 8 CFR § 214.2(f)(10)(ii), and the right to apply for a 24-month extension of post-completion OPT for students with a degree in science, technology, engineering, or mathematics (§ 214.2(f)(1)(ii)(C))." Doc. 1 at 8-9. This Court's temporary restraining order recognized that termination of her SEVIS status would affect not only her graduation, but "also jeopardizes her academic progress and negatively impacts her future career opportunities." Doc. 8 at 5. That's exactly what Dr. Saxena is pursuing now. Doc. 51, Declaration of James D. Leach, Exhibit 1. If the government were

12

right that this case became moot once Dr. Saxena graduated, this Court would have dismissed the case on May 13, not granted a preliminary injunction.

The second fundamental problem with the government's mootness argument is that it fails to address the voluntary cessation doctrine. This Court explicitly asked the government about this at the preliminary injunction hearing. The government did not have an acceptable answer. This Court's preliminary injunction order explicitly relies on the voluntary cessation doctrine in ruling the case is not moot. Doc. 39 at 10 to 12. The government, in response, says not one word. No litigant can reasonably expect a court to reverse itself when the litigant does not address the basis for the court's ruling.

## V. This Court already ruled that the Complaint states a claim on which relief can be granted; no basis exists to reconsider that ruling; and if it is reconsidered on the merits, this Court remains correct

The government asserts that the Complaint fails to state a claim on which relief can be granted. As best Dr. Saxena can discern, the specifics seem to be that "to the extent her claim rests upon termination of [SEVIS] status, she fails to state a claim upon which relief can be granted"; that "an APA cause of action requires a final agency action," which it claims has not occurred here, and that she cannot state a procedural due process claim. Doc. 47 at 20 and 22.

13

This Court ruled that Dr. Saxena stated a claim on which relief can be granted. In the temporary restraining order, this Court ruled that Dr. Saxena "is likely to show that DHS's termination of her F-1 student status was not in compliance with 8 C.F.R. § 214.1(d), and was 'arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law.'" Doc. 8 at 5. The Court relied on the APA. Again in the preliminary injunction, this Court ruled that "Saxena is likely to succeed on the merits of her APA claim." Doc. 39 at 16. These rulings rest on the premise that Dr. Saxena indeed states a claim on which relief can be granted. No basis exists to reconsider these rulings. As this Court has found, courts throughout the country have granted relief from the government's unlawful termination of SEVIS status. Doc. 39 at 12. As this Court ruled, a SEVIS termination is final agency action. Doc. 39 at 13-14. And the Court has not reached the procedural due process claim, so that claim cannot be grounds for setting aside its order.

**VI.   This Court already found that Dr. Saxena faces irreparable harm sufficient to justify the preliminary injunction; no grounds exist for reconsideration; and this Court was right**

This Court ruled that for multiple reasons, Dr. Saxena established that without preliminary relief, she is likely to suffer irreparable harm. These reasons include that termination of her SEVIS record would result in the loss of timely academic

progress (now timely professional progress through OPT); that it would leave her in an uncertain legal status; that other courts have found irreparable harm where there is a "loss or delay in obtaining employment authorization"; that "[a]bsent injunctive relief, Saxena's career trajectory is jeopardized by the risk that defendants will once again arbitrarily terminate her SEVIS record"; and that "many district courts" have concluded that people in her position suffer irreparable harm, including "[t]he fear of arrest and detention, including removal to a country outside the student's country of origin 'without justification.'" Doc. 39 at 18-19. All these factors led this Court to conclude that "Saxena will suffer an irreparable injury absent a preliminary injunction." Doc. 39 at 20.

Before the preliminary injunction hearing, the government disputed that Dr. Saxena faced a threat of irreparable harm. Doc. 20 at 5-6. Some of its authorities now are cut-and-pasted from that brief. Doc. 47 at 23-25. The government lost on this issue. It has no right to relitigate it. The government argues that its April 26, 2025, policy eliminates the possibility of irreparable injury, but that policy was in effect before the preliminary injunction was issued on May 15, and made no difference. Doc. 39 at 12 n.4. This Court's ruling on irreparable injury was and is correct. Defendants have shown no grounds to reargue the issue.

15

## VII. Defendants' permanent injunction argument fails

In one paragraph, the government asserts, in support of its motion to dismiss, that Dr. Saxena should not be entitled to a preliminary injunction, because she cannot become entitled to a permanent injunction. The reason for this, in turn, is supposedly because at the end of the case, the best she can hope for is that the agency decision against her is vacated. But the government does not cite a single case that says that vacatur and a permanent injunction are incompatible. Doc. 47 at 25-26.

Besides being unsupported by authority, the government's argument does not make sense, because it would mean that no victim of unlawful government agency action could ever become entitled to a preliminary or permanent injunction. This would come as a surprise to all those district courts that have enjoined unlawful agency action, in SEVIS cases and otherwise. And the argument is wrong. Vacatur and injunctive relief are separate remedies that can co-exist in the same case. *Firearms Regul. Accountability Coalition, Inc. v. Garland*, 112 F.4th 507, 526 (8th Cir. 2024), citing *Monsanto Co. v. Geertson Seed Farms,* 561 U.S. 139, 165-55 (2010), for the principle that "an injunction may be warranted if vacatur does not sufficiently redress the plaintiff's injury." So contrary to the government's argument, victims

16

of illegal agency action need not be left defenseless against renewed iterations of the same lawless conduct. "Generally, federal courts can remedy unlawful agency action both through prohibitory injunctions, and mandatory injunctions." *Perales v. Thornburgh*, 967 F.2d 798, 811 (3d Cir. 1992) (citation omitted).

## VIII. Conclusion

This Court entered a preliminary injunction in favor of Dr. Saxena, properly and justly protecting her against unlawful government action. The government is not entitled to reconsideration of the issues it already lost, nor does it explicitly seek it. By not calling its motion a motion for reconsideration, it does not escape the stringent standards that govern one. Even if this Court reconsiders, its previous order was correct and should not be altered.

Dated: July 15, 2025          Respectfully submitted,

/s/ James D. Leach
James D. Leach
Attorney at Law
1617 Sheridan Lake Rd.
Rapid City, SD 57702
Tel: (605) 341-4400
jim@southdakotajustice.com
Attorney for Plaintiff

## Certificate of Service

    I certify that on July 15, 2025, I filed this document using CM/ECF, thereby causing automatic electronic service to be made on counsel for defendants.

                                     /s/ James D. Leach
                                     James D. Leach