UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| PRIYA SAXENA, <br><br> Plaintiff, <br><br> vs. <br><br> KRISTI NOEM, in her official capacity as Secretary of Homeland Security; THE DEPARTMENT OF HOMELAND SECURITY; and TODD LYONS, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement, <br><br> Defendants. | 5:25-CV-05035-KES <br><br><br> ORDER DENYING PLAINTIFF'S MOTION FOR PERMANENT INJUNCTION WITHOUT PREJUDICE AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS |

Plaintiff, Dr. Priya Saxena, moves under Federal Rule of Civil Procedure 65 for a permanent injunction against defendants, Secretary of the Department of Homeland Security, Kristi Noem; the Director of Immigration and Customs Enforcement (ICE), Todd Lyons; and the United States Department of Homeland Security (DHS). Docket 40. Defendants oppose the motion for a permanent injunction. Docket 44. Defendants also move to dismiss Saxena's claims under Rules 12(b)(1), 12(h)(3), and 12(b)(6). Docket 46; Docket 47. For the reasons stated below, the court denies Saxena's motion for a permanent injunction without prejudice and grants in part and denies in part defendants' motion to dismiss.

**BACKGROUND**

I.    **Nonimmigrant F-1 Student Status and SEVIS Records**

The Immigration and Nationality Act (INA) permits international students to enter the United States with a nonimmigrant F-1 visa and enroll at government-approved educational institutions. *See* 8 U.S.C. § 1101(a)(15)(F)(i). Once a student enters the United States with an F-1 visa, the student is granted F-1 student status and is permitted to remain in the United States for the duration of status[1] if the student continues to meet certain conditions outlined in 8 C.F.R. § 214.2(f).

To acquire F-1 student status, an applicant must present a Form I-20, which is issued by a school certified by DHS's Student Exchange Visitor Program (SEVP). 8 C.F.R. § 214.2(f)(1). Certified schools must issue the Form I-20 using the Student and Exchange Visitor Program (SEVIS) system—DHS's centralized database used to maintain information regarding F-1 students in the United States. *See* 8 C.F.R. § 214.3(a)(1); 8 U.S.C. § 1372. A school must have dedicated school officials (DSOs), who are responsible for overseeing enrolled students holding F-1 visas and for updating the student's records in SEVIS to indicate whether the student has maintained their status. *See* 8 C.F.R. § 214.3(g) (outlining recordkeeping and reporting requirement for DSOs at certified schools).

---

[1] "Duration of status is defined as the time during which an F-1 student is pursuing a full course of study at an educational institution certified by SEVP for attendance by foreign students, or engaging in authorized practical training following completion of studies." 8 C.F.R. § 214.2(f)(5)(i).

An international student with F-1 status is permitted to stay in the United States as long as they continue to meet the requirements of their visa classification by maintaining a full course of study or engaging in "authorized practical training following the completion of studies."[2] 8 C.F.R. § 214.2(f)(5). Once a student has completed their course of study and any authorized practical training, they generally have 60 days to either depart the United States or transfer to another approved academic institution. *Id.* A student who "fails to maintain a full course of study without the approval of the DSO or otherwise fails to maintain status," must immediately leave the United States or seek reinstatement of their status. 8 C.F.R. § 214(f)(5)(iv); *see also* 8 U.S.C. § 1184(a)(1). Reinstatement is discretionary, and, if denied, the student may not appeal the decision. 8 C.F.R. § 214.2(f)(16)(ii).

Additionally, nonimmigrant visa-holders, such as students with F-1 visas, must refrain from certain specified activity to maintain their lawful visa status. 8 C.F.R. § 214.1(e)-(g). This means F-1 visa students are prohibited from engaging in unauthorized employment, providing false information to DHS, or engaging in "criminal activity." *Id.* For purposes of maintaining status, criminal activity is defined as a "conviction . . . for a crime of violence for which

---

[2] Students are entitled to participate in two types of post-completion practical training: Curricular Practical Training (CPT) and Optional Practical Training (OPT). *See* 8 C.F.R. § 214.2(f)(10)(i) & (ii). Students may also qualify for a "24-month extension of post-completion OPT for a science, technology, engineering, or mathematics (STEM) degree." 8 C.F.R. § 214.2(f)(10)(ii)(C). In such a scenario, "duration of status" is defined as "the period beginning on the date that the student's application for OPT was properly filed and pending approval, including the authorized period of post-completion OPT, and ending 60 days after the OPT employment authorization expires." 8 C.F.R. § 214.2(f)(10)(D).

a sentence of more than one year imprisonment may be imposed." 8 C.F.R.
§ 214.1(g). Further, absent student conduct causing a status violation, DHS
may terminate an F-1 student's status only in the following three ways: (1) by
revocation of a previously authorized waiver under 8 U.S.C. § 1182(d)(3) or
1182(d)(4) on the individual's behalf; (2) through introduction of a private bill in
Congress to confer permanent resident status; or (3) by notification in the
Federal Register on the basis of national security, diplomatic, or public safety
reasons. 8 C.F.R. § 214.1(d).

Prior to April 26, 2025, it was DHS and ICE's policy that "[v]isa
revocation is not, in itself, a cause for termination of the student's SEVIS
record." Docket 5 at 8 (emphasis omitted) (quoting ICE, *Policy Guidance*, 1004-
04-*Visa Revocations*, 1, 3 (June 7, 2010)); *see also* Docket 1-1 ¶ 15 (explaining
that "both [DHS] and ICE have stated that visa revocation has no effect on visa
status"). Under this policy, it was generally understood that "even after visa
revocation[,] an F-1 student maintains [visa] status" and would not suffer a
termination of their SEVIS record. Docket 1-1 ¶ 15.

On April 26, 2025, however, ICE promulgated a new policy concerning
the termination of students' SEVIS records. *See* Docket 18. Specifically, the
policy states that "[a] terminated record in SEVIS could indicate that the
nonimmigrant no longer maintains" F-1 status. *Id.* at 2. The policy also
provides that "[i]f [the U.S. Department of State] revokes a nonimmigrant visa
effective immediately, SEVP may terminate the nonimmigrant's SEVIS record
based on the visa revocation with immediate effect." *Id.* at 3.

## II.    Termination of Saxena's SEVIS Record

The facts are set forth based on the court's findings after the preliminary injunction hearing.

Saxena is a citizen and national of India. Docket 1 ¶ 1. She lawfully entered the United States on an F-1 student visa to enroll in a Ph.D. program in Chemical and Biological Engineering at the South Dakota School of Mines and Technology. *Id.* ¶¶ 1, 6-7. Having worked toward receiving her Ph.D. degree since January 2020, Docket 4 ¶ 7, Saxena successfully graduated from the program on May 10, 2025, *see* Docket 1 ¶¶ 1, 22.

Saxena asserts she was "a bona fide student pursuing a full course of study" during her Ph.D. program. *Id.* ¶ 7. Although Saxena was charged with driving or control of a vehicle while under the influence on or about August 7, 2021, Docket 13 at 12-13, the charge was dismissed after Saxena pleaded guilty to failure to stop for an emergency vehicle,[3] Docket 11 at 3; Docket 1 ¶ 15. Saxena ultimately paid a fine for the 2021 traffic violation. Docket 4 ¶ 5. Further, Saxena informed the U.S. Embassy in New Delhi of the traffic violation prior to the issuance of her current 2022 visa. *Id.* ¶ 6; Docket 11 at 3. Saxena explained at the preliminary injunction hearing that her 2022 visa was renewed after an interview, review of the legal documents related to her 2021 traffic violation, and a full medical examination.

---

[3] Failing to stop for an emergency vehicle is a Class 2 misdemeanor under South Dakota law and imposes a minimum fine of $275. SDCL § 32-31-6.1. The maximum penalty for a Class 2 misdemeanor is 30 days imprisonment and a fine of $500. SDCL § 22-6-2.

On April 7, 2025, Saxena received an email from the Consular Information Unit in the U.S. Embassy in New Delhi stating that "additional information became available after [Saxena's] visa was issued. As a result, [Saxena's] F-1 visa with expiration date 09-FEB-2027 was revoked in accordance with Section 221(i) of the United States Immigration and Nationality Act." Docket 37 at 38. The email also informed Saxena that:

> Remaining in the United States without lawful immigration status can result in fines, detention, and/or deportation. It may also make you ineligible for a future U.S. visa. Please note that deportation can take place at a time that does not allow the person being deported to secure possessions or conclude affairs in the United States. Persons being deported may be sent to countries other than their countries of origin.

*Id.* On the same day, Saxena received an email from her DSO at the School of Mines. *Id.* at 39. Her DSO explained that, as of April 4, 2025, Saxena's "SEVIS immigration record ha[d] been terminated by the Department of Homeland Security." *Id.* In the email, her DSO indicated that the reason for the termination of her SEVIS record was "[i]ndividual identified in [a] criminal records check and/or has had their VISA revoked. SEVIS record has been terminated." *Id.* DHS did not notify Saxena that her SEVIS record had been terminated; she only learned of her altered status through her DSO. Docket 1 ¶¶ 9-11.

On April 16, 2025, the School of Mines informed Saxena that, due to the termination of her SEVIS record, she would not be allowed to graduate from her Ph.D. program on May 10, 2025. *Id.* ¶¶ 12, 22; Docket 4 ¶ 7. The termination of her SEVIS status and record also threatened "the possibility of

additional training and opportunities that otherwise would be available to [Saxena] under the law, including OPT (optional practical training)." Docket 4 ¶ 7. Her DSO wrote to the United States Citizenship and Immigration Services requesting that Saxena's F-1 student status be reinstated. Docket 1 ¶ 17; Docket 4-4. But the DSO did not receive a response. Docket 1 ¶ 17.

## PROCEDURAL HISTORY

On April 17, 2025, Saxena filed a complaint against defendants raising two claims: (1) unlawful termination of her SEVIS record in violation of the Administrative Procedure Act (APA); and (2) violation of her procedural due process rights in violation of the Fifth Amendment. *Id.* ¶¶ 27-31. That same day, Saxena moved for a temporary restraining order and for a preliminary and permanent injunction. Docket 2. In her motion, Saxena requested a TRO to (1) restrain the government from taking enforcement action against, interfering with, or transferring Saxena outside the court's jurisdiction; and (2) require defendants to set aside their termination decision as to Saxena's SEVIS record and status. *Id.*; Docket 3.

Following a hearing on Saxena's motion for TRO, on April 18, 2025, the court entered a TRO, requiring defendants to reinstate Saxena's SEVIS record and status, retroactive to April 4, 2025. Docket 8 at 8. The TRO further enjoined defendants from taking any additional enforcement action against Saxena arising from termination of her SEVIS record or visa, and enjoined defendants from transferring Saxena out of the court's jurisdiction during

these proceedings. *Id.* at 7. The court extended this TRO for a period of 14

days, set to expire on May 16, 2025. Docket 25 at 3.

On May 15, 2025, this court granted Saxena's motion for a preliminary

injunction. *See* Docket 39 at 21-22. Specifically, the court ordered that:

1. Defendants remain enjoined from taking any enforcement action against Saxena arising directly or indirectly from the April 2025 termination of her SEVIS record or visa.

2. Defendants also remain enjoined from interfering with Saxena's freedom or transferring Saxena out of the jurisdiction of the District of South Dakota during these proceedings without prior court approval.

3. Defendants are required to continue to set aside their determination to mark Saxena's F-1 student status as terminated. Defendants shall also ensure that Saxena's student status and SEVIS authorization, remain active, retroactive to April 4, 2025.

4. Defendants shall maintain Saxena's SEVIS record for the duration of the litigation absent defendants becoming aware of a newly discovered independent legal ground allowing removability. Defendants shall provide notice to Saxena and this court of an intent to terminate Saxena's SEVIS status or record 15 days prior to such termination.

*Id.* That same day, Saxena filed her motion for a permanent injunction.

Docket 40; Docket 41. In her motion, Saxena argues that she is entitled

to a permanent injunction for the same reasons that the court awarded

her a preliminary injunction. Docket 41 at 2.

On June 30, 2025, the government moved to dismiss Saxena's APA

and procedural due process claims on the grounds that (1) this court

does not have subject matter jurisdiction over Saxena's claims and

(2) Saxena failed to state a claim upon which relief could be granted.

Docket 46. On July 14, 2025, the government filed a notice of

interlocutory appeal with the Eighth Circuit, challenging this court's order granting Saxena's motion for a preliminary injunction. Docket 48. But on October 31, 2025, the Eighth Circuit granted the government's voluntary motion to dismiss its appeal. Docket 58; Docket 59.

## LEGAL STANDARDS

### I.    Dismissal Under Rules 12(b)(1), 12(h)(3), and 12(b)(6)

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for a pre-answer motion to dismiss for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Rule 12(h)(3) provides that "[i]f the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). A Rule 12(h)(3) motion to dismiss is evaluated under the same standards as a Rule 12(b)(1) motion to dismiss. *Gesinger v. Burwell*, 210 F. Supp. 3d 1177, 1186 (D.S.D. 2016).

In deciding a motion to dismiss under Rule 12(b)(1), a district court "must distinguish between a 'facial attack' and a 'factual attack' on jurisdiction." *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016) (quoting *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990)). When a party mounts a facial challenge to subject matter jurisdiction—that is, when the facts alleged, even if true, are insufficient to establish jurisdiction—"the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Id.* (internal quotation marks omitted). "In a factual attack, the court considers matters outside the pleadings, and the non-moving

party does not have the benefit of 12(b)(6) safeguards." *Osborn*, 918 F.2d at 729 n.6.

A court may dismiss a complaint under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In reviewing a motion to dismiss under Rule 12(b)(6), the court accepts well pleaded factual allegations as true and construes all reasonable inferences in the light most favorable to the plaintiff. *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008). To avoid dismissal under Rule 12(b)(6), a plaintiff must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## II.    Permanent Injunction Standard

The standard for issuing a preliminary or permanent injunction is essentially the same but for one key difference. *See Oglala Sioux Tribe v. C & W Enters., Inc.*, 542 F.3d 224, 229 (8th Cir. 2008). In seeking a permanent injunction, the moving party must "show actual success on the merits, rather than the fair chance of prevailing on the merits required for a standard preliminary injunction." *Id.* If the moving party demonstrates actual success on the merits, "courts must then consider three factors to determine whether a permanent injunction is warranted: '(1) the threat of irreparable harm to the moving party; (2) the balance of harms with any injury an injunction may inflict on other parties; and (3) the public interest.' " *Miller v. Thurston*, 967 F.3d 727, 735-36 (8th Cir. 2020) (quoting *Oglala Sioux Tribe*, 542 F.3d at 229).

10

## DISCUSSION

As a threshold matter, the court will first address defendants' arguments regarding mootness before turning to defendants' motion to dismiss Saxena's claims under Rules 12(b)(1), 12(h)(3), and 12(b)(6) and Saxena's motion for a permanent injunction.

## I.    Mootness

Defendants again argue that this case is moot because the central relief sought—reactivation of Saxena's SEVIS record—has been accomplished. Docket 47 at 17. In opposition to Saxena's motion for a preliminary injunction, defendants argued that Saxena's request to restore her SEVIS record was moot because Saxena's SEVIS record had been reinstated. Docket 16 at 6-7. In an email to Saxena's counsel, defendants stated that "ICE has no plans under its new SEVIS policy to re-terminate [Saxena's] SEVIS record based solely on the [National Crime Information Center (NCIC)] record that led to [the SEVIS record's] initial termination." Docket 28-3. Defendants argued that Saxena's case was moot based on the above statement, and its assertion that "ICE's reactivation of [Saxena's] SEVIS record is being made retroactive to the date of its initial termination." *Id.*

In granting Saxena's motion for a preliminary injunction, this court determined that the case was not moot because defendants failed to explain why re-termination of Saxena's SEVIS record could not be reasonably expected

11

to recur.[4] *See* Docket 39 at 11-12. Now, in its motion to dismiss, defendants again argue that this case is moot because "there is no more relief this [c]ourt can provide her." Docket 47 at 17. But defendants again fail to explain why its "allegedly wrongful behavior could not be reasonably expected to recur." *See Ctr. For Special Needs Tr. Admins., Inc. v. Olson*, 676 F.3d 688, 697 (8th Cir. 2012) (citation omitted); *see also Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (declining to find a case moot unless it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur" (citation omitted)). As such, this court does not find Saxena's claims moot. *See Vemula v. Noem*, 2025 WL 3527141, at *4-5 (N.D. Ill Dec. 9, 2025) (holding that plaintiffs' claims challenging termination of their SEVIS records are not moot, in part, because defendants failed to demonstrate "that the challenged conduct could not reasonably be expected to recur").

## II.    Motion to Dismiss Under Rules 12(b)(1) and 12(h)(3)

Defendants argue that the preliminary injunction issued in this case exceeds the court's jurisdiction. *See* Docket 47 at 11-16. Defendants assert

---

[4] Defendants recently submitted a declaration from Akil Baldwin, the Acting Assistant Director for the National Security Division of HSI. Docket 66-1. Defendants assert that the declaration "confirms and further supports Defendants' arguments that the issues raised by Dr. Saxena in this action are moot, the preliminary injunction should be vacated, and this case should be dismissed." Docket 66 ¶ 4. But the Baldwin Declaration makes representations similar to those made in previous declarations submitted by defendants, *see* Docket 67 at 2 (noting that the "Baldwin Declaration establishes nothing new"), which the court previously rejected when it considered defendants' mootness arguments, *see* Docket 39 at 12 n.4.

that the "preliminary injunction remedy must be limited to the inadequacy that produced the injury in fact, that is the termination of [Saxena's] SEVIS record." *Id.* at 15-16. Defendants argue that the court violated this principle by enjoining defendants from interfering "with Saxena's freedom or transferring Saxena out of the jurisdiction of the District of South Dakota during these proceedings without prior court approval." *Id.* at 11 (quoting Docket 39 at 21). Defendants also assert that the requirement that defendants must provide Saxena and this court with 15-days' notice prior to termination of Saxena's SEVIS status or record exceeds this court's jurisdiction. *Id.*

The court will not again address defendants' arguments that 28 U.S.C. § 1252(g) deprives this court of jurisdiction to hear Saxena's claims, *see* Docket 47 at 12, which the court previously found did not deprive it of jurisdiction, *see* Docket 39 at 14-15 (holding that the court "has jurisdiction to enjoin defendants from imposing any consequences, including detention and removal, resulting from the termination of Saxena's SEVIS record and F-1 status"). Further, the court rejects defendants' argument that the issued preliminary injunction should be dismissed because it "essentially immunize[s] Ms. Saxena from the enforcement of immigration laws regardless of the circumstance." Docket 47 at 13. The preliminary injunction expressly provides that defendants must maintain Saxena's SEVIS record "absent defendants becoming aware of a newly discovered independent legal ground allowing removability." Docket 39 at 21.

But the court agrees with defendants that the "preliminary injunction should be limited to action based on the April 4, 2025, termination of Ms. Saxena's SEVIS record." *See* Docket 47 at 14-16. As such, the court finds that the provisions providing for 15-days' notice and court approval are more than a simple "redress [of] the plaintiff's particular injury," *see Gill v. Whitford*, 585 U.S. 48, 73 (2018), because the provisions place limitations on the government's ability to commence removal proceedings based on grounds other than the April 4, 2025, termination of Saxena's SEVIS record. Because of this, the court will modify the preliminary injunction[5] issued in this case as follows:

1. Defendants remain enjoined from taking any enforcement action against Saxena arising directly or indirectly from the April 2025 termination of her SEVIS record or visa.

2. Defendants are required to set aside their determination to mark Saxena's F-1 student status as terminated resulting from the April 2025 termination of her SEVIS record. Defendants shall also ensure that Saxena's student status and SEVIS authorization, remain active, retroactive to April 4, 2025.

3. Defendants shall maintain Saxena's SEVIS record for the duration of the litigation absent defendants becoming aware of a newly discovered independent legal ground allowing removability.

---

[5] "In modifying a preliminary injunction, a district court is not bound by a strict standard of changed circumstances but is authorized to make any changes in the injunction that are equitable in light of subsequent changes in the facts or the law, or for any other good reason." *Movie Sys., Inc. v. MAD Minneapolis Audio Distribs.*, 717 F.2d 427, 430 (8th Cir. 1983).

### III.    Motion to Dismiss under Rule 12(b)(6)

#### A. APA Claim

Defendants again argue that Saxena's APA claim should be dismissed because termination of a student's SEVIS record is not a final agency action under the APA. Docket 47 at 18-22. Defendants assert that "legal consequences do not flow from the mere changing of a SEVIS record to terminated because it does not terminate the student's nonimmigrant status or result in the revocation of a nonimmigrant visa." *Id.* at 21. Defendants thus conclude that Saxena has failed to state a claim under the APA. *See id.*

The APA "allow[s] a person 'adversely affected or aggrieved' by agency action to obtain judicial review thereof, so long as the decision challenged represents a 'final agency action for which there is no other adequate remedy in court.' " *Webster v. Doe*, 486 U.S. 592, 599 (1988) (quoting 5 U.S.C. §§ 701-06). An action is final under the APA only if (1) it marks the "consummation of the agency's decisionmaking process" and (2) "the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Sisseton-Wahpeton Oyate of Lake Traverse Rsrv. v. U.S. Corps of Eng'rs*, 888 F.3d 906, 915 (8th Cir. 2018) (internal quotation marks omitted and cleaned up). For an action to mark the consummation of the agency's decisionmaking process, the "action cannot be tentative or interlocutory in nature." *Id.*

At this stage, the court finds that Saxena has sufficiently alleged that termination of her SEVIS records and her F-1 status was a final agency action.

*See* Docket 1 ¶¶ 23-28. The court previously found that the termination of Saxena's SEVIS status is a final agency action. *See* Docket 39 at 13-14. In so holding, this court joined several other district courts in rejecting the arguments that defendants make here—namely, that a student's SEVIS record is not linked to the student's immigration status. *See, e.g.*, *Doe v. Trump*, 784 F. Supp. 3d 1297, 1308 (N.D. Cal. 2025) (rejecting defendants' argument "that there is a distinction between having an active SEVIS record and maintaining lawful F-1 status [as] unpersuasive and unsupported by the record"); *Isserdasani v. Noem*, 2025 WL 1330188, at *6 (W.D. Wis. May 7, 2025) ("[D]efendant's argument that changing a student's SEVIS record to 'terminated' does not also have the effect of terminating their status is 'semantics.' "). As such, the court again finds that the termination of Saxena's SEVIS record constituted a final agency action. Docket 39 at 13-14; *see also Doe v. Noem*, 2025 WL 1141279, at *3 (W.D. Wash. Apr. 17, 2025) (holding that termination of SEVIS record and student status was a final agency decision); *Jie Fang v. Dir. U.S. Immigr. & Customs Enf't*, 935 F.3d 172, 182 (3d Cir. 2019) ("The order terminating these students' F-1 visas marked the consummation of the agency decisionmaking process, and is therefore a final order.").

Viewing the facts in the light most favorable to Saxena, the court finds that she has plausibly stated a claim under the APA. As explained above, an F-1 visa holder's status may be subject to termination in three circumstances: (1) revocation of a waiver; (2) introduction of a private bill to confer permanent residence on the nonimmigrant; or (3) pursuant to notification in the Federal

Register, due to national security, diplomatic, or public safety. *See* 8 C.F.R.

§ 214.1(d). Here, Saxena alleges that defendants had no statutory or regulatory

authority for the termination of her SEVIS record and that defendants have

failed to articulate a basis for the termination decision. Docket 1 ¶¶ 27-28.

Additionally, Saxena alleges that there is no administrative remedy available to

her. *Id.* ¶ 23. She concludes that the termination decision was "arbitrary,

capricious, an abuse of discretion, and not in accordance with law, in excess of

statutory authority, and without procedure required by law." *Id.* ¶ 28. Based on

the above allegations, the court finds that Saxena has sufficiently alleged that

defendants did not have a legitimate basis to terminate Saxena's F-1 statuses

under 8 C.F.R. § 214.1(d). Thus, the court denies defendants' motion to

dismiss Saxena's APA claim.

### B. Procedural Due Process Claim

Defendants argue that Saxena's procedural due process claim should be

dismissed because Saxena does not have a liberty or property interest in her

SEVIS record. Docket 47 at 22. As the Eighth Circuit has explained, a

procedural due process claim requires that there be deprivation of "a

constitutionally protected life, liberty or property interest." *Mulvenon v.

Greenwood*, 643 F.3d 653, 657 (8th Cir. 2011) (citation omitted). In

immigration proceedings, there is no constitutionally protected liberty or

property interest in obtaining purely discretionary relief. *See Garcia-Mateo v.

Keisler*, 503 F.3d 698, 700 (8th Cir. 2007).

17

Saxena alleges that "she has a constitutionally protected property interest in her SEVIS registration." Docket 1 ¶ 30. Defendants assert that Saxena does not have a property interest in her SEVIS records because the SEVIS database is a "law enforcement database" that does not affect the lawfulness of an individual's nonimmigrant status. Docket 47 at 22-23. Other district courts have determined that students do not have a protected property interest in their SEVIS records. *See, e.g.*, *Vemula*, 2025 WL 3527141, at *7 (dismissing students' due process claim because students did not have protected property interest); *Zhao v. Va. Polytechnic Inst. & State Univ.*, 2018 WL 5018487, at *6 (W.D. Va. Oct. 16, 2018) (finding that adjusting student's SEVIS record "without prior notice and a hearing" did not violate the student's procedural due process rights because "there is no legal basis or precedent supporting [student's] contention that his SEVIS status constitutes an independent property interest implicating due process"). Similarly, this court determines that Saxena does not have a constitutionally protected property interest in her SEVIS registration. As such, the court grants defendants' motion to dismiss Saxena's procedural due process claim because Saxena has failed to allege that she has "a constitutionally protected life, liberty or property interest." *Mulvenon*, 643 F.3d at 657.

## IV.    Motion for Permanent Injunction

Saxena argues that she is entitled to a permanent injunction based on the same reasons set forth in the court's order granting Saxena's motion for a preliminary injunction. *See* Docket 40 at 2. Defendants argue that Saxena's

motion for a permanent injunction should be denied because it is untimely and improperly seeks to invoke Local Rule 65.1. Docket 44 at 1-2.

Local Rule 65.1 provides "[i]n all cases wherein a party seeks both a preliminary and permanent injunction, the matters will be deemed consolidated for trial unless otherwise specifically ordered by the court." D.S.D. L.R. 65.1. While Saxena moved for a permanent injunction prior to the hearing on the preliminary injunction, *see* Dockets 1 and 2, the court agrees with defendants that consolidating the hearing with a trial on the merits would unfairly prejudice them. *See* Docket 44 at 6.

Additionally, the court finds the facts in *United States v. 2035, Inc.*, 2015 WL 13824118 (D.S.D. Jan 23, 2015) comparable to the present case. There, the defendant objected to the entry of a preliminary injunction and claimed that the hearing for the preliminary injunction should have been consolidated with the trial for a permanent injunction as provided in Local Rule 65.1. *2035, Inc.*, 2015 WL 13824118, at *1. The court rejected this argument, noting that the court issued two orders scheduling the preliminary injunction hearing that "specifically advised the parties that the court would conduct a 'hearing on plaintiff's motion for preliminary injunction.' " *Id.* Additionally, at the hearing, the parties only "argued the merits of a preliminary injunction." *Id.*

Here, the court's scheduling order specifically advised the parties that the "hearing on the motion for preliminary injunction will be held on Tuesday, May 13, 2025." Docket 15. At the hearing, the parties only argued the merits of the preliminary injunction. *See, e.g.*, Docket 56 at 55 (Saxena's attorney

asserting "that's why we need the preliminary injunction"). The court solely took the issue of whether to grant Saxena's motion for preliminary injunction under advisement with a written opinion to follow. *Id.* As such, the court finds that consolidating the preliminary injunction hearing with a trial on the merits would unfairly prejudice defendants and that the court "otherwise specifically ordered" as provided in Rule 65.1. Thus, the court denies Saxena's motion for a permanent injunction (Docket 40) without prejudice.

### CONCLUSION

Based on the foregoing, it is ORDERED:

1. Defendants motion to dismiss (Docket 46) is denied as to Saxena's First Cause of Action (APA Claim) and granted as to Saxena's Second Cause of Action (Procedural Due Process Claim). Defendants are ordered to file their answer in a timely manner.

2. Saxena's motion for a permanent injunction (Docket 40) is denied without prejudice.

3. The preliminary injunction is modified as follows:

   a. Defendants remain enjoined from taking any enforcement action against Saxena arising directly or indirectly from the April 2025 termination of her SEVIS record or visa.

   b. Defendants are required to set aside their determination to mark Saxena's F-1 student status as terminated resulting from the April 2025 termination of her SEVIS record. Defendants

shall also ensure that Saxena's student status and SEVIS authorization, remain active, retroactive to April 4, 2025.

c. Defendants shall maintain Saxena's SEVIS record for the duration of the litigation absent defendants becoming aware of a newly discovered independent legal ground allowing removability.

Dated January 12, 2026.

BY THE COURT:

/s/ *Karen E. Schreier*

KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE

21