UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| PRIYA SAXENA,<br><br>Plaintiff,<br><br>vs.<br><br>MARKWAYNE MULLIN,[1] in his official capacity as Secretary of Homeland Security; THE DEPARTMENT OF HOMELAND SECURITY; and TODD LYONS, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement,<br><br>Defendants. | 5:25-CV-05035-KES<br><br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

Plaintiff, Dr. Priya Saxena, moves under Federal Rule of Civil Procedure 56 for summary judgment granting a permanent injunction against defendants, Secretary of the Department of Homeland Security, Markwayne Mullin; the Director of Immigration and Customs Enforcement (ICE), Todd Lyons; and the United States Department of Homeland Security (DHS). Docket 72. Defendants oppose the motion for summary judgment. Docket 78. For the reasons stated below, the court grants Saxena's motion for summary judgment.

## PROCEDURAL HISTORY

On April 17, 2025, Saxena filed a complaint against defendants raising two claims: (1) unlawful termination of her SEVIS record in violation of the

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the court substitutes acting Secretary of Homeland Security, Markwayne Mullin, for Kristi Noem. *See* Fed. R. Civ. P. 25(d).

Administrative Procedure Act (APA); and (2) violation of her procedural due process rights in violation of the Fifth Amendment. Docket 1 ¶¶ 27-31. That same day, Saxena moved for a temporary restraining order and for a preliminary and permanent injunction. Docket 2. In her motion, Saxena requested a temporary restraining order (TRO) to (1) restrain the government from taking enforcement action against, interfering with, or transferring Saxena outside the court's jurisdiction; and (2) require defendants to set aside their termination decision as to Saxena's SEVIS record and status. *Id.*; Docket 3.

Following a hearing on Saxena's motion for TRO, on April 18, 2025, the court entered a TRO, requiring defendants to reinstate Saxena's SEVIS record and status retroactive to April 4, 2025. Docket 8 at 8. The TRO further enjoined defendants from taking any additional enforcement action against Saxena arising from termination of her SEVIS record or visa, and enjoined defendants from transferring Saxena out of the court's jurisdiction during these proceedings. *Id.* at 7. The court later extended this TRO for a period of 14 days, set to expire on May 16, 2025. Docket 25 at 3.

On May 15, 2025, this court granted Saxena's motion for a preliminary injunction. *See* Docket 39 at 21-22. Specifically, the court ordered that:

1. Defendants remain enjoined from taking any enforcement action against Saxena arising directly or indirectly from the April 2025 termination of her SEVIS record or visa.

2. Defendants also remain enjoined from interfering with Saxena's freedom or transferring Saxena out of the jurisdiction of the District of South Dakota during these proceedings without prior court approval.

2

3. Defendants are required to continue to set aside their determination to mark Saxena's F-1 student status as terminated. Defendants shall also ensure that Saxena's student status and SEVIS authorization, remain active, retroactive to April 4, 2025.

4. Defendants shall maintain Saxena's SEVIS record for the duration of the litigation absent defendants becoming aware of a newly discovered independent legal ground allowing removability. Defendants shall provide notice to Saxena and this court of an intent to terminate Saxena's SEVIS status or record 15 days prior to such termination.

*Id.* That same day, Saxena filed a motion for a permanent injunction. Docket 40; Docket 41.

On June 30, 2025, the government moved to dismiss Saxena's APA and procedural due process claims on the grounds that this court did not have subject matter jurisdiction over Saxena's claims and that Saxena failed to state a claim upon which relief could be granted. Docket 46. On January 20, 2026, the court denied Saxena's motion for a permanent injunction without prejudice and granted in part and denied in part defendants' motion to dismiss. Docket 69. Specifically, the court denied defendants' motion to dismiss Saxena's APA claim but granted the motion to dismiss as to Saxena's procedural due process claim. *Id.* at 20.

Now, Saxena moves for summary judgment granting a permanent injunction on her APA claim. Docket 72. Saxena requests that the permanent injunction provide as follows:

1. Defendants are enjoined from taking any enforcement action against Saxena arising directly or indirectly from the April 2025 termination of her SEVIS record or visa;

2. Defendants are required to set aside their determination to mark Saxena's F-1 status as terminated resulting from the April 2025 termination of her SEVIS record. Defendants shall also ensure that Saxena's student status and SEVIS authorization, remain active, retroactive to April 4, 2025;

3. Defendants shall maintain Saxena's SEVIS record permanently absent defendants becoming aware of a newly discovered independent legal ground allowing removability or a newly discovered independent legal ground allowing termination of her SEVIS record.

*Id.* at 1-2 (cleaned up). Saxena argues that because no genuine issue of material fact exists, this case is appropriate for summary judgment. *See id.* at 2; Docket 84 at 3.

## BACKGROUND

When considering a motion for summary judgment, the court generally views the facts and the inferences drawn from such facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). The undisputed material facts relevant to Saxena's motion for summary judgment are as follows.

## I.    Nonimmigrant F-1 Student Status and SEVIS Records

The Immigration and Nationality Act (INA) permits international students to enter the United States with a nonimmigrant F-1 visa and enroll at government-approved educational institutions. *See* 8 U.S.C. § 1101(a)(15)(F)(i). Once a student enters the United States with an F-1 visa, the student is granted F-1 student status and is permitted to remain in the United States for

the duration of status[2] if the student continues to meet certain conditions outlined in 8 C.F.R. § 214.2(f).

To acquire F-1 student status, an applicant must present a Form I-20, which is issued by a school certified by DHS's Student Exchange Visitor Program (SEVP). 8 C.F.R. § 214.2(f)(1). Certified schools must issue the Form I-20 using the Student and Exchange Visitor Program (SEVIS) system—DHS's centralized database used to maintain information regarding F-1 students in the United States. *See* 8 C.F.R. § 214.3(a)(1); 8 U.S.C. § 1372. A school must have dedicated school officials (DSOs), who are responsible for overseeing enrolled students holding F-1 visas and for updating the student's records in SEVIS to indicate whether the student has maintained their status. *See* 8 C.F.R. § 214.3(g) (outlining recordkeeping and reporting requirement for DSOs at certified schools).

An international student with F-1 status is permitted to stay in the United States as long as they continue to meet the requirements of their visa classification by maintaining a full course of study or engaging in "authorized practical training following the completion of studies."[3] 8 C.F.R. § 214.2(f)(5).

---

[2] "Duration of status is defined as the time during which an F-1 student is pursuing a full course of study at an educational institution certified by SEVP for attendance by foreign students, or engaging in authorized practical training following completion of studies." 8 C.F.R. § 214.2(f)(5)(i).

[3] Students are entitled to participate in two types of post-completion practical training: Curricular Practical Training (CPT) and Optional Practical Training (OPT). *See* 8 C.F.R. § 214.2(f)(10)(i) & (ii). Students may also qualify for a "24-month extension of post-completion OPT for a science, technology, engineering, or mathematics (STEM) degree." 8 C.F.R. § 214.2(f)(10)(ii)(C). In such a scenario, "duration of status" is defined as "the period beginning on the date

Once a student has completed their course of study and any authorized practical training, they generally have 60 days to either depart the United States or transfer to another approved academic institution. *Id.* A student who "fails to maintain a full course of study without the approval of the DSO or otherwise fails to maintain status," must immediately leave the United States or seek reinstatement of their status. 8 C.F.R. § 214(f)(5)(iv); *see also* 8 U.S.C. § 1184(a)(1). Reinstatement is discretionary, and, if denied, the student may not appeal the decision. 8 C.F.R. § 214.2(f)(16)(ii).

Additionally, nonimmigrant visa-holders, such as students with F-1 visas, must refrain from certain specified activity to maintain their lawful visa status. 8 C.F.R. § 214.1(e)-(g). This means F-1 visa students are prohibited from engaging in unauthorized employment, providing false information to DHS, or engaging in "criminal activity." *Id.* For purposes of maintaining status, criminal activity is defined as a "conviction . . . for a crime of violence for which a sentence of more than one year imprisonment may be imposed." 8 C.F.R. § 214.1(g). Further, absent student conduct causing a status violation, DHS may terminate an F-1 student's status only in the following three ways: (1) by revocation of a previously authorized waiver under 8 U.S.C. § 1182(d)(3) or 1182(d)(4) on the individual's behalf; (2) through introduction of a private bill in Congress to confer permanent resident status; or (3) by notification in the

---

that the student's application for OPT was properly filed and pending approval, including the authorized period of post-completion OPT, and ending 60 days after the OPT employment authorization expires." 8 C.F.R. § 214.2(f)(10)(D).

Federal Register on the basis of national security, diplomatic, or public safety reasons. 8 C.F.R. § 214.1(d).

Prior to April 26, 2025, it was DHS and ICE's policy that "[v]isa revocation is not, in itself, a cause for termination of the student's SEVIS record." Docket 5 at 8 (emphasis omitted) (quoting ICE, *Policy Guidance*, 1004-04-*Visa Revocations*, 1, 3 (June 7, 2010)); *see also* Docket 1-1 ¶ 15 (explaining that "both [DHS] and ICE have stated that visa revocation has no effect on visa status"). Under this policy, it was generally understood that "even after visa revocation[,] an F-1 student maintains [visa] status" and would not suffer a termination of their SEVIS record. Docket 1-1 ¶ 15.

On April 26, 2025, however, ICE promulgated a new policy concerning the termination of students' SEVIS records. *See* Docket 18. Specifically, the policy states that "[a] terminated record in SEVIS could indicate that the nonimmigrant no longer maintains" F-1 status. *Id.* at 2. The policy also provides that "[i]f [the U.S. Department of State] revokes a nonimmigrant visa effective immediately, SEVP may terminate the nonimmigrant's SEVIS record based on the visa revocation with immediate effect." *Id.* at 3.

## II.    Termination of Saxena's SEVIS Record

Saxena is a citizen and national of India. Docket 1 ¶ 1. She lawfully entered the United States on an F-1 student visa to enroll in a Ph.D. program in Chemical and Biological Engineering at the South Dakota School of Mines and Technology in January 2020. *Id.* ¶¶ 1, 6-7; Docket 74 ¶ 1; Docket 79 ¶ 1.

Saxena successfully graduated from the program on May 10, 2025. Docket 74 ¶ 29; Docket 79 ¶ 29.

On or about August 7, 2021, Saxena was arrested for driving or controlling a vehicle while under the influence. Docket 13 at 12-13. Because her blood alcohol content was below the minimum DWI level, the charge was later dismissed. *See* Docket 74 ¶ 3; Docket 79 ¶ 3. Saxena later pleaded guilty to failure to stop for an emergency vehicle[4] and paid a fine for the traffic violation. Docket 74 ¶ 3; Docket 79 ¶ 3.

Saxena traveled to India in December of 2021 but during her return trip to the United States, she was denied boarding. Docket 74 ¶¶ 5-6; Docket 79 ¶¶ 5-6. Saxena was later informed by the Consular Information Unit at the United States Embassy in New Delhi that her visa had been revoked and that she should report to the U.S. Embassy. Docket 74 ¶¶ 7-8; Docket 79 ¶¶ 7-8; *see also* Docket 38 at 8. At the U.S. Embassy in New Delhi, Saxena underwent an Online Nonimmigrant Visa Application to obtain a new visa to continue her studies at the School of Mines. Docket 74 ¶ 9; Docket 79 ¶ 9. During her interview, Saxena asserts that she disclosed the traffic violation and her DWI arrest. Docket 74 ¶ 11; Docket 79 ¶ 11. Following the interview and a 7-8 hour medical examination, the U.S. Embassy issued her a new visa effective

---

[4] Failing to stop for an emergency vehicle is a Class 2 misdemeanor under South Dakota law and imposes a minimum fine of $275. SDCL § 32-31-6.1. The maximum penalty for a Class 2 misdemeanor is 30 days imprisonment and a fine of $500. SDCL § 22-6-2.

February 14, 2022, with an expiration date of February 9, 2027. Docket 74 ¶¶ 10, 12; Docket 79 ¶¶ 10, 12.

After returning to the School of Mines to continue her PhD program, on April 7, 2025, Saxena received an email from the Consular Information Unit in the U.S. Embassy in New Delhi stating that "additional information became available after [Saxena's] visa was issued. As a result, [Saxena's] F-1 visa with expiration date 09-FEB-2027 was revoked in accordance with Section 221(i) of the United States Immigration and Nationality Act." Docket 38 at 38; Docket 74 ¶ 14; Docket 79 ¶ 14. The email also informed Saxena that

> [r]emaining in the United States without lawful immigration status can result in fines, detention, and/or deportation. It may also make you ineligible for a future U.S. visa. Please note that deportation can take place at a time that does not allow the person being deported to secure possessions or conclude affairs in the United States. Persons being deported may be sent to countries other than their countries of origin.

Docket 38 at 38; Docket 74 ¶ 14; Docket 79 ¶ 14. The same day, Saxena received an email from her DSO at the School of Mines. Docket 38 at 39; Docket 74 ¶ 21; Docket 79 ¶ 21. Her DSO explained that, as of April 4, 2025, Saxena's "SEVIS immigration record ha[d] been terminated by the Department of Homeland Security." Docket 38 at 39; Docket 74 ¶ 21. In the email, her DSO indicated Saxena's SEVIS record was terminated because she was "identified in [a] criminal records check and/or has had their VISA revoked." Docket 38 at 39.

On April 16, 2025, Saxena asserts the School of Mines informed her that due to the termination of her SEVIS record she would not be allowed to

graduate from her PhD program on May 10, 2025. Docket 74 ¶ 22; Docket 79 ¶ 22; *see also* Docket 4-4 at 1 (Saxena's DSO indicating that failing to reinstate Saxena "would disrupt [her] academic progress and jeopardize her ability to complete her degree program"). And she asserts she was informed that the termination of her SEVIS status and record also threatened "the possibility of additional training and opportunities that otherwise would be available to [Saxena] under the law, including OPT (optional practical training)." Docket 74 ¶ 25; Docket 79 ¶ 25; *see also* Docket 4-4 at 1 (Saxena's DSO indicating that failing to reinstate Saxena's SEVIS record would "negatively impact her future career opportunities, as [her PhD] program is essential for achieving her professional goals in Chemical and Biological Engineering").

After obtaining a TRO from this court, which retroactively restored her SEVIS record, Saxena was able to graduate from her PhD program on May 10, 2025. Docket 74 ¶¶ 28-29; Docket 79 ¶¶ 28-29. Additionally, after the court granted Saxena's motion for a preliminary injunction, Saxena applied for OPT. Docket 74 ¶¶ 30-32; Docket 79 ¶¶ 30-32. On June 29, 2025, Saxena received written approval of her OPT application from the United States Citizenship & Immigration Service. Docket 74 ¶ 33; Docket 79 ¶ 33. With her approved employment authorization, Saxena has been working at the South Dakota School of Mines and Technology as a Postdoctoral Fellow in the Department of Chemical and Biological Engineering. Docket 74 ¶ 34; Docket 79 ¶ 34.

**LEGAL STANDARDS**

### I.      Permanent Injunction Standard

"The standard for issuing a preliminary or permanent injunction is essentially the same" but for one key difference. *See Oglala Sioux Tribe v. C & W Enters., Inc.*, 542 F.3d 224, 229 (8th Cir. 2008). To obtain a permanent injunction, the moving party must "show actual success on the merits, rather than the fair chance of prevailing on the merits required for a standard preliminary injunction." *Id.* If the moving party demonstrates actual success on the merits, "courts must then consider three factors to determine whether a permanent injunction is warranted: '(1) the threat of irreparable harm to the moving party; (2) the balance of harms with any injury an injunction may inflict on other parties; and (3) the public interest.' " *Miller v. Thurston*, 967 F.3d 727, 735-36 (8th Cir. 2020) (quoting *Oglala Sioux Tribe*, 542 F.3d at 229).

### II.     Summary Judgment Standard

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party may satisfy this burden by presenting evidence that there is no genuine dispute of material fact or by showing that the nonmoving party has failed to present evidence supporting an element of its claim on which it bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party must inform the court of the basis for its motion and identify the portions of

11

the record that show there is no genuine issue in dispute. *Hartnagel v. Norman,* 953 F.2d 394, 395 (8th Cir. 1992).

To avoid summary judgment, "[t]he nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.'" *Mosley v. City of Northwoods,* 415 F.3d 908, 910 (8th Cir. 2005) (quoting *Krenik v. Cnty. of Le Sueur,* 47 F.3d 953, 957 (8th Cir. 1995)). Summary judgment "must be denied if on the record then before it the court determines that there will be sufficient evidence for a jury to return a verdict in favor of the nonmoving party." *Krenik,* 47 F.3d at 957. Summary judgment is precluded if there is a genuine dispute of fact that could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986).

## DISCUSSION

### I.  Actual Success on the Merits

To succeed on her APA claim, Saxena must show that defendants' action to terminate her SEVIS record was "arbitrary, capricious," or "otherwise not in accordance with law." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983). The APA "allow[s] any person 'adversely affected or aggrieved' by agency action to obtain judicial review thereof, so long as the decision challenged represents a 'final agency action for which there is no other adequate remedy in court.'" *Webster v. Doe,* 486 U.S. 592, 599 (1988) (quoting 5 U.S.C. §§ 701-06).

12

Saxena argues that because there is no genuine dispute of material fact that she has demonstrated actual success on the merits of her APA claim, the court should grant her a permanent injunction. Docket 75 at 5-7. Defendants argue that granting a permanent injunction is inappropriate because Saxena cannot show actual success on the merits. Docket 78 at 12-26. Specifically, defendants argue that (1) termination of a SEVIS record does not terminate F-1 status; (2) termination of Saxena's SEVIS record is not a final agency action under the APA; and (3) the Privacy Act precludes relief.[5] *Id.*

### A. Termination of Saxena's SEVIS Record Constitutes Final Agency Action

The court has previously considered and rejected defendants' argument that termination of a SEVIS record is not a final agency action under the APA. *See* Docket 39 at 13-14; Docket 69 at 15-17. Additionally, in its most recent

---

[5] To the extent defendants raise a mootness argument, *see* Docket 78 at 5-6, the court again rejects the contention that this case is moot because defendants fail to explain why its actions cannot reasonably be expected to reoccur, *see* Docket 39 at 12; Docket 69 at 12 (rejecting defendants' mootness argument because they "fail to explain why its 'allegedly wrongful behavior could not be reasonably expected to recur.'" (quoting *Ctr. for Special Needs Tr. Admins., Inc. v. Olson*, 676 F.3d 688, 697 (8th Cir. 2012)). Several other district courts have similarly determined that even with the submission of certain documents, such as ICE's April 2025 policy or the Baldwin Declaration, claims such as Saxena's are not moot. *See, e.g., Roe v. Noem*, 2026 WL 194636, at *3-5 (D. Mont. Jan. 26, 2026) (finding that the "hedging and narrow language" in the Baldwin and Watson Declarations are insufficient to demonstrate that plaintiff's SEVIS claim was moot); *Patel v. Lyons*, 2026 WL 587640, at *7-8 (D.D.C. Feb. 27, 2026) (finding that plaintiff's SEVIS claim was not moot because neither ICE's April 2025 policy nor the Baldwin Declaration "prevents ICE from altering its 'position' or 'plans' tomorrow—or terminating Plaintiff's SEVIS record based on his 2018 arrest alongside other inadequate factors"); *Bushireddy v. Lyons*, 2026 WL 759480, at *6-7 (D.D.C. Mar. 18, 2026); *Presidents' All. on High Educ. & Immigr. v. Noem*, 2026 WL 788185, at *10-11 (D. Mass. Mar. 20, 2026).

order granting in part and denying in part defendants' motion to dismiss, the court rejected defendants argument "that a student's SEVIS record is not linked to the student's immigration status." Docket 69 at 16; *see also* Docket 78 at 12-16. As the court explained in those orders, termination of Saxena's SEVIS record essentially terminated her F-1 status and was a final agency action under the APA. *See* Docket 39 at 13-14; Docket 69 at 15-17; *see also Isserdasani v. Noem*, 2025 WL 1330188, at *6 (W.D. Wis. May 7, 2025) ("[D]efendant's argument that changing a student's SEVIS record to 'terminated' does not also have the effect of terminating their status is 'semantics.' "). In so holding, this court joined several other district courts in finding that termination of a student's SEVIS record was a final agency action. Docket 39 at 13-14 (collecting cases); Docket 69 at 15-16 (collecting cases); *see also Patel*, 2026 WL 587640, at *5 (finding that "every other federal district court to have passed on the question . . . conclude[ed] that the termination of a SEVIS record constitutes 'final agency action' triggering APA review").

An action is final under the APA only if (1) it marks the "consummation of the agency's decisionmaking process" and (2) "the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Sisseton-Wahpeton Oyate of Lake Traverse Rsrv. v. U.S. Corps of Eng'rs*, 888 F.3d 906, 915 (8th Cir. 2018) (internal quotation marks omitted and cleaned up). For an action to mark the consummation of the agency's decisionmaking process, the "action cannot be tentative or interlocutory in nature." *Id.*

14

Here, the undisputed facts indicate that the termination of Saxena's SEVIS record was the "consummation of the agency's decisionmaking process" and was an action "from which legal consequences will flow." *Sisseton-Wahpeton Oyate*, 888 F.3d at 915. First, this court again joins several other district courts in concluding that termination of a student's SEVIS records constitutes the "consummation of the agency's decisionmaking process," *id.*, because there is no further agency action that Saxena could invoke or exhaust, *see, e.g.*, *Patel*, 2026 WL 587640, at *5; *Bushireddy*, 2026 WL 759480, at *8-9; *Isserdasani*, 2025 WL 1330188, at *7. Further, while defendants argue that the "consummation of decisionmaking" does not occur until an immigration judge issues a final order in the individual's removal proceedings, Docket 78 at 12-14, as explained below, by terminating Saxena's SEVIS record for "failing to maintain status," ICE can bypass removal proceedings against a student whose SEVIS record has been terminated,[6] *see Jie Fang v. Dir. U.S. Immigr. & Customs Enf't*, 935 F.3d 172, 183 (3d Cir. 2019). Thus, without offering Saxena an alternative remedy to challenge her SEVIS record termination, defendants' termination of Saxena's SEVIS record was not "merely tentative or

---

[6] For similar reasons, the court finds that defendants' reliance upon *Dubey v. Homeland Sec.*, 154 F.4th 534 (7th Cir. 2025) is misplaced. *See* Docket 78 at 18-19. In *Dubey*, the Seventh Circuit held that administrative decisions about plaintiffs' OPT programs, which led to the revocation of the plaintiffs' visas and subsequent removal orders, were not final agency actions under the APA. *Dubey*, 154 F.4th at 537. But such a scenario is inapplicable here because "there is no automatic review of [Saxena's] SEVIS termination and . . . the termination [of her SEVIS record] is [not] intertwined with removal proceedings." *Öztürk v. Trump*, 819 F. Supp. 3d 45, 57 n.9 (D. Mass. 2025).

15

interlocutory," *U.S. Army Corps Eng'rs v. Hawkes Co.*, 578 U.S. 590, 597 (2016) (citation omitted), as defendants suggest, *see* Docket 78 at 19.

Second, ICE's decision to terminate Saxena's SEVIS record was evidently an action "from which legal consequences will flow." *Sisseton-Wahpeton Oyate*, 888 F.3d at 915. Despite defendants' contention that termination of Saxena's SEVIS record did not terminate her F-1 status, *see* Docket 78 at 12-16, the "[t]ermination of a SEVIS record for failure to maintain status obligates a student to depart from the country post haste," *Patel*, 2026 WL 587640, at *6; *see also* 8 U.S.C. § 1184(a)(1); 8 C.F.R. § 214.2(f)(5)(iv). As such, Saxena faced immediate consequences from the termination of her SEVIS record for "fail[ure] to maintain status." *See* Docket 38 at 38-39 (The U.S. Embassy in New Delhi warning Saxena that "[r]emaining in the United States without a lawful immigration status can result in fines, detention, and/or deportation" including deportation to a country outside her country of origin); *see also* 8 C.F.R. § 214.2(f)(5)(iv) ("[A]n F-1 student who . . . fails to maintain status is not eligible for an additional period [to prepare] for departure."). Additionally, following termination of Saxena's SEVIS record, she would have lost any employment authorization, could not have re-entered the United States, and may have been subjected to potential investigation by ICE to ensure that she had departed the United States. *See Presidents' All. on Higher Educ. & Immigr.*, 2026 WL 788185, at *17; *Bushireddy*, 2026 WL 759480, at *9. Thus, defendants' argument that the termination of Saxena's SEVIS record did not determine her "rights or obligations or impose legal obligations" is unavailing.

16

Docket 78 at 18. Based on the foregoing, the court finds that termination of Saxena's SEVIS record constitutes final agency action under the APA.

### B. The Privacy Act Does Not Preclude Relief

Defendants argue that Saxena cannot show actual success on the merits of her APA claim because the APA's waiver of sovereign immunity does not extend to her claim. Docket 78 at 20-22. Defendants instead contend that the Privacy Act provides the exclusive means for Saxena to challenge the termination of her SEVIS record. *Id.* at 20-21. Defendants thus conclude that Saxena is barred from seeking relief under the APA. *Id.*

The APA waives sovereign immunity for actions in federal court brought by "person[s] suffering legal wrong because of agency action." 5 U.S.C. § 702. To fall within the statutory waiver of sovereign immunity, the action must "seek[] relief other than money damages." *Id.* Additionally, an individual cannot obtain relief under the APA "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." *Id.* A statute forbids relief under the APA when it is the exclusive remedy for the claim in question. *See Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 216 (2012).

Here, defendants fail to point to any supporting authority for its argument that the Privacy Act is the exclusive remedy for Saxena's claim. Rather, defendants' arguments blatantly ignore the many other district court decisions finding that a student may challenge the termination of their SEVIS records under the APA. For example, the United States District Court for the

17

District of Columbia held in *Alliance for Retired Americans v. Bessent*, 770 F. Supp. 3d 79 (D.D.C. 2025), that the Privacy Act does not impliedly forbid related forms of relief under the APA. *Id.* at 105. Instead, the court found that "Congress did not intend for the Privacy Act to be an 'exclusive' source of claims or remedies for alleged mishandling of records about individuals that impliedly forbids other relief under the APA." *Id.*; *see also Dep't of Agric. Rural Dev't Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 63 (2024) (rejecting argument that remedies under the Fair Credit Reporting Act could not be obtained simply because similar remedies were obtainable under the Privacy Act). The court thus found that a student challenging the termination of their SEVIS record could proceed on their APA claim. *All. for Retired Ams.*, 770 F. Supp. 3d at 105-06. Numerous other courts have similarly found that a challenge to an allegedly wrongful SEVIS termination "substantively challenges agency decisions [and] is properly sought under the APA." *Doe #1 v. Noem*, 781 F. Supp. 3d 246, 263-65 (D.N.J. 2025) (collecting cases); *see also Liu v. Noem*, 780 F. Supp. 3d 386, 400 (D.N.H. 2025) (finding that plaintiff's claim, "which challenges DHS's substantive determination, is outside of the Privacy Act's realm"); *Patel*, 2026 WL 587640, at *6-7 (finding that plaintiff "can challenge termination of his SEVIS record under the APA"). Thus, the court finds, as many other courts have, that the Privacy Act does not displace relief under the APA and that Saxena may pursue her claim under the APA.

The court also notes that defendants' arguments regarding the Privacy Act suffer from several additional flaws. For example, as defendants note, the

18

remedy offered by the Privacy Act is not available to Saxena. *See* Docket 78 at 25-24. Under 5 U.S.C. § 522a(a)(2), only U.S. citizens, lawful permanent residents, and citizens of certain designated countries may sue under the Privacy Act. 5 U.S.C. § 552a(a)(2). Saxena, who is a citizen of India, cannot obtain relief under the Privacy Act. Thus, Saxena's ability to seek relief under the Privacy Act is nonexistent. *See, e.g., Patel*, 2026 WL 587640, at *6 ("[T]he Privacy Act cannot afford Plaintiff any remedial mechanism, much less an adequate one.").

Further, just as other courts have found, the claims of international students challenging the termination of their SEVIS records "do not sound in the Privacy Act." *Bushireddy*, 2026 WL 759480, at *8; *see also Liu*, 780 F. Supp. 3d at 400 (finding that student's challenge to termination of SEVIS record was "outside of the Privacy Act's reach"); *Parra Rodriguez v. Noem*, 2025 WL 1284722, at *6 (D. Conn. May 1, 2025) (recognizing that plaintiff did "not seek to amend her SEVIS record, but rather for [the government] to fully reinstate it with no gaps in status resulting from [the] unlawful termination of it"). Instead, these students are concerned "not with the *accuracy* of [their] SEVIS record but [rather] with [their] actual F-1 *status*." *Bushireddy*, 2026 WL 759480, at *8. Thus, the Privacy Act, which permits certain individuals who appear in an agency's "system of records" to request amendment of such records, *see* 5 U.S.C. § 552a(d)(2)-(3), does not provide the remedy that students like Saxena seek, *see, e.g., Doe v. Noem*, 781 F. Supp. 3d 1055, 1066 (E.D. Cal. 2025) ("Because plaintiff would not qualify for relief under the

19

Privacy Act, the court concludes that he clearly does not have an alternative, adequate remedy that limits the APA's waiver of the government's immunity."); *Öztürk v. Trump*, 819 F. Supp. 3d at 57-58 (finding that "[t]he exception to the APA's waiver of sovereign immunity is not implicated here, at least because . . . the Privacy Act does not provide the relief [plaintiff] seeks").

Based on the foregoing, the court finds that defendants have failed to demonstrate that the Privacy Act impliedly forbids APA claims challenging the termination of an international student's SEVIS record. The court joins several other district courts in concluding that Saxena's APA claim falls within the waiver of sovereign immunity under 5 U.S.C. § 702. *See, e.g.*, *Doe v. Noem*, 783 F. Supp. 3d 907, 923 (W.D. Va. May 14, 2025) (collecting cases). Thus, the court finds that the Privacy Act does not bar relief on Saxena's APA claim.

### C. Termination of Saxena's SEVIS Record was Arbitrary and Capricious

After reviewing the administrative record, *see* Docket 85, the court concludes that defendants' decision to terminate Saxena's SEVIS record was arbitrary and capricious. An agency action is arbitrary and capricious if the agency has "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43. While a court may not "substitute its judgment for that of the agency . . . the agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts

20

found and the choice made.' " *Id.* (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)).

Here, the undisputed facts demonstrate that Saxena's SEVIS record and F-1 visa was terminated because she was "identified in a criminal records check and/or has had [her] VISA revoked."[7] Docket 38 at 38-39. But defendants fail to point to a regulation that would authorize the termination of Saxena's SEVIS record due to her 2021 traffic violation. Saxena's arrest for a DWI was ultimately dismissed and she later pleaded guilty to a Class 2 misdemeanor under South Dakota law. Docket 74 ¶¶ 2-4; Docket 79 ¶¶ 2-4; *see also* S.D.C.L. § 32-31-6.1. Thus, Saxena did not fail to maintain status under 8 C.F.R. § 214.1(g) because 8 C.F.R. § 214.1(g) provides that an individual fails to maintain status if they are convicted of "a crime of violence for which a sentence of more than one year imprisonment may be imposed."

---

[7] The administrative record reveals that Saxena's SEVIS record was terminated after agency officials ran the name of foreign students through the National Crime Information Center (NCIC) and received 660 NCIC hits for students with "positive matches with encounters with law enforcement." Docket 85 at 4. The Department of State and ICE then created a spreadsheet with the 660 NCIC hits in furtherance of their "Student Criminal Alien Initiative." *Id.* at 28. On April 3, 2025, this spreadsheet was sent to Shane Myers with the Department of State and to the Department of Homeland Security (DHS). *Id.* at 29-30. In the email to DHS, an unidentified individual requested that DHS terminate 262 students' SEVIS status and inquired how to prioritize revocation of another 384 students' visas. *Id.* at 30. Saxena was included on this list. *Id.* at 27. The record also fails to include any information about her termination other than the fact that she appeared on the NCIC hit list.

21

Similarly, there is no genuine dispute of material fact that other circumstances in which defendants may initiate termination of status were present. The government may terminate the

> nonimmigrant status of an alien   . . . by the revocation of a waiver authorized on his or her behalf under section 212(d)(3) or (4) of the Act; by the introduction of a private bill to confer permanent resident status on such alien; or, pursuant to notification in the Federal Register, on the basis of national security, diplomatic, or public safety reasons.

8 C.F.R. § 214.1(d). A nonimmigrant may also fail to maintain status if they engage in unauthorized employment or provide false information to the government. *Id.* § 214.1(e)-(f). But defendants fail to point to genuine disputes of material fact indicating that any of these circumstances were present when ICE terminated Saxena's SEVIS record. There is simply nothing in the record to indicate that Saxena engaged in some course of conduct that constituted a failure to maintain her status, thus justifying the termination of her SEVIS record. Accordingly, ICE's decision to terminate Saxena's SEVIS record impermissibly "relied on factors which Congress has not intended it to consider" in violation of the APA. *See Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43.

Thus, defendants' actions in terminating Saxena's SEVIS record were arbitrary or capricious because it failed to articulate "a rational connection between the facts found and the choice made." *Id.* (citation omitted). As such, because defendants have offered no "satisfactory explanation" for how it looked at these undisputed facts and reasonably determined that termination of Saxena's SEVIS record was warranted, *id.*, the court finds that Saxena has demonstrated actual success on the merits of her APA claim.

22

## II.   Irreparable Harm

Having found that Saxena has demonstrated actual success on the merits, the court must next consider whether there is a threat of irreparable harm. *Miller*, 967 F.3d at 735-36. Saxena argues that the threat of irreparable harm is "grave" because if her SEVIS record were to again be revoked, she would no longer be eligible to participate in OPT. Docket 74 ¶ 25; Docket 79 ¶ 25. Saxena argues that this would negatively impact her ability to pursue the areas of research discussed in her PhD dissertation and her future employment opportunities. Docket 75 at 5.

Other courts have found that "a student whose SEVIS record has been unlawfully terminated may incur 'economic losses stemming from [the student's] inability to work as a research assistant or to receive [a] stipend.' " *Öztürk*, 819 F. Supp. 3d at 61 (quoting *Liu*, 780 F. Supp. 3d at 403); *see also Doe v. Noem*, 778 F. Supp. 3d 1151, 1165 (W.D. Wash. 2025) (finding that removal "would compound the other harms [p]laintiff faces" by interrupting his academic progress and "causing [him] economic and reputational loss wherever [he] ultimately resides"). Such irreparable harm may also arise where the termination of a student's SEVIS record "interfere[s] with on-campus employment authorization" and that disrupts a crucial part of a student's graduate program and future employment opportunities. *Öztürk*, 819 F. Supp. 3d at 61 (determining that irreparable harm exists because plaintiff was unable to continue her on-campus employment and to work on research projects important to furthering plaintiff's "doctoral training and professional

23

development"); *see also Oruganti v. Noem*, 2025 WL 1144560, at *4-5 (S.D. Ohio Apr. 18, 2025) (finding that irreparable harm exists because termination of plaintiff's SEVIS record ended plaintiff's on-campus employment which formed "an integral part of her doctoral training"); *see also Doe*, 778 F. Supp. 3d at 1164 ("Under these unique circumstances where Plaintiff's continued work and lawful immigration status are interlinked, the prospect of Plaintiff losing his grant-funded work as a doctoral candidate is likewise irreparable."); *Shaik v. Noem*, 801 F. Supp. 3d 825, 835-36 (D. Minn. 2025) (finding that irreparable harm exists where SEVIS record termination constituted "harrowing life disruptions that would make it impossible for any student to focus on learning or working and contributing to life here in the United States").

For similar reasons, the court finds that the threat of irreparable injury exists. Saxena's ability to continue her OPT program hinges upon maintenance of her SEVIS record. Thus, if defendants were to re-terminate her SEVIS record, Saxena would lose the ability to engage in her post-graduate work, and it would jeopardize her career trajectory. In its previous order granting Saxena's motion for a preliminary injunction, the court held that "Saxena's uncertain legal status as it relates to her ability to apply for OPT programs and the more-than speculative risk that she may be arrested and deported in the absence of injunctive relief convinces this court that Saxena will suffer an irreparable injury." Docket 39 at 20. Defendants fail to provide a sufficient reason why this irreparable injury no longer exists. *See* Docket 78 at 4-5.

Defendants' contentions that re-termination of Saxena's SEVIS record will not reoccur are insufficient, *id.* at 5, because as several other district courts have noted defendants have made conflicting promises and "unceasing attempts to remove noncitizens from the country." *Ortega Gonzalez v. Noem*, 2025 WL 1355272, at *5 (D. Or. May 9, 2025) (finding that defendants' inability to explain and failure to repudiate termination of plaintiff's SEVIS record justified injunctive relief); *see also Patel*, 2026 WL 587640, at *8 (rejecting defendants' assertions that it would not re-terminate a student's SEVIS record because the assertions did not make "absolutely clear" that the student's SEVIS record would not be re-terminated). Thus, because Saxena faces the loss of future OPT training, professional and career development, and the threat of removal if defendants were to re-terminate her SEVIS record without additional cause, the court finds that this factor weighs in favor of granting Saxena's motion for summary judgment for a permanent injunction.

### III.   Balance of Harms and Public Interest

The balance of harms and public interest factors merge when the government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). The public has a vested interest in having governmental agencies abide by federal laws as "[t]here is generally no public interest in the perpetuation of unlawful agency action." *Missouri v. Trump*, 128 F.4th 979, 997 (8th Cir. 2025) (quoting *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)).

25

Defendants argue that "[a] permanent injunction would effectively place [Saxena] in a judicially supervised immigration status insulated from lawful agency action," which would "intrude on the Executive's statutory authority." Docket 78 at 26. But granting Saxena's motion for summary judgment and issuing a permanent injunction would prevent defendants from terminating Saxena's SEVIS record absent an independent ground contemplated by statute or regulation. Thus, contrary to defendants' suggestion, granting Saxena a permanent injunction would not "insulate" her from future legal action. *See also* Docket 72 (permitting defendants' to revoke Saxena's SEVIS record should defendants become aware of "a newly discovered independent legal ground allowing removability" or "a newly discovered independent legal ground allowing termination of her SEVIS record"). As such, defendants have failed to explain how granting Saxena a permanent injunction would intrude upon defendants' "statutory authority." Docket 78 at 26.

Defendants also argue that a permanent injunction would "intrude" upon the Executive Branch's administration of immigration laws and would fail to preserve "agency discretion." *Id.* But again, defendants have failed to explain or demonstrate that they have complied with the relevant statutory framework when terminating Saxena's SEVIS record. And because "[t]here is generally no public interest in the perpetuation of unlawful agency action," *Trump*, 128 F.4th at 997, the court finds that the balance of harms and the public interest favor granting Saxena's motion for summary judgment for a permanent injunction.

**CONCLUSION**

Based on the foregoing, it is ORDERED:

1. That Saxena's motion for summary judgment (Docket 72) is granted.

2. That defendants are permanently enjoined as follows:

    a. Defendants are enjoined from taking any enforcement action against Saxena arising directly or indirectly from the April 2025 termination of her SEVIS record or visa.

    b. Defendants are required to set aside their determination to mark Saxena's F-1 student status as terminated resulting from the April 2025 termination of her SEVIS record. Defendants shall also ensure that Saxena's student status and SEVIS authorization, remain active, retroactive to April 4, 2025.

    c. Defendants shall maintain Saxena's SEVIS record permanently absent defendants becoming aware of a newly discovered independent legal ground allowing removability or a newly discovered independent legal ground allowing termination of her SEVIS record.

Dated June 2, 2026.

BY THE COURT:

/s/ *Karen E. Schreier*

KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE

27